ALBERT E. TROWBRIDGE, APPELLEE, v. ETHEL G. BISSON
ET AL., APPELLANTS.

44 N. W. 2d 810

Filed December 8, 1950.   No. 32828.

*Lightner & Johnson,* for appellants.

*Wagner & Wagner,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE,

YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff brought this action seeking specific performance by defendants of a contract to sell their homestead. After hearing upon the merits, the trial court entered a judgment finding generally for plaintiff and ordering specific performance without any recovery of special damages. Defendants' motion for new trial was overruled, and they appealed, substantially assigning as error that the judgment for specific performance was contrary to the evidence and the law. We sustain that assignment.

Plaintiff cross-appealed, assigning that the trial court erred in refusing to enter a judgment for rent as special damages. In view of our conclusion that plaintiff was not entitled to specific performance, it follows that plaintiff's assignment in the cross-appeal has no merit, and will not be further discussed.

The primary and controlling issue is whether or not the alleged contract to sell the homestead was void and unenforceable because not acknowledged by both husband and wife, as required by section 40-104, R. S. Supp., 1949. We conclude that it was so void and unenforceable.

At the outset it should be stated that this is not a case where any innocent party in good faith relied upon a certificate of acknowledgment. Neither is it one involving the impeachment of a certificate of acknowledgment for mere irregularity in its execution or defect of wording. Rather, this is a case for trial de novo, wherein it appears from the evidence, clear, satisfactory, and convincing in character, that there was in fact no legal acknowledgment ever taken as required by law.

Section 40-104, R. S. Supp., 1949, provides that the homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is done is executed and acknowledged by both husband and wife. In that connection, this court has held that a contract to convey the homestead of a married person is abso-

lutely void and unenforceable unless validly executed and acknowledged by both husband and wife. Anderson v. Schertz, 94 Neb. 390, 143 N. W. 238.

An acknowledgment has been defined as: "The act by which a party who has executed an instrument of conveyance as grantor goes before a competent officer or court, and declares or acknowledges the same as his genuine and voluntary act and deed." Black's Law Dictionary, (3d ed.), p. 31. See, also, Aultman & Taylor Co. v. Jenkins, 19 Neb. 209, 27 N. W. 117; § 76-216, R. R. S. 1943. In the light thereof, it is generally the rule that if the party executing such an instrument knows that he is before an officer having authority to take acknowledgments, understands that such officer is present for the purpose of taking his acknowledgment, intends to then do whatever is necessary to make the instrument effective, and the acknowledging officer's official certificate is attached thereto, then such acknowledgment, in the absence of fraud, will be conclusive in favor of those who in good faith rely upon it. Council Bluffs Savings Bank v. Smith, 59 Neb. 90, 80 N. W. 270, 80 Am. S. R. 669; Fisher v. Standard Investment Co., 145 Neb. 80, 15 N. W. 2d 355.

On the other hand, where the grantor has never appeared before the officer for the purpose of acknowledging the instrument as aforesaid, and it was never in fact acknowledged, a certificate of acknowledgment is not conclusive of the facts recited therein, and evidence showing its invalidity for such reason is admissible even against a bona fide holder. 1 C. J. S., Acknowledgments, § 124, p. 885; 1 C J., Acknowledgments, § 270, p. 890; Bacon v. Western Securities Co., 125 Neb. 812, 252 N. W. 317.

As stated in 1 Am. Jur., Acknowledgments, § 142, p. 376: "A grantor in an instrument of conveyance who never at any time appeared for the purpose of acknowledging the instrument is not bound in any wise by the recitals in the certificate of acknowledgment attached

by a notary public. The notary is without authority or jurisdiction to attach any certificate whatever. In such a case, the jurisdiction of the officer not having been invoked, his utterance is a nullity and his certificate has no evidentiary force whatever in favor or against anyone." See, also, Annotation, 72 A. L. R. 1302; Pereau v. Frederick, 17 Neb. 117, 22 N. W. 235.

This is particularly true in the case at bar, because, as stated in 1 Am. Jur., Acknowledgments, § 143, p. 376: "In proceedings, whether collateral or otherwise, which involve only the rights of the parties to the transaction or other persons having notice of the facts, there seems to be no good reason why parol evidence should not be admitted to contradict the recitals of a certificate and show them to be false, if such is the fact. Nor does it seem to be essential that the assailant of the certificate show fraud, mistake, collusion, or the like, although some such element in the transaction naturally and customarily constitutes the ground of attack." See, also, 1 Am. Jur., Acknowledgments, § 148, p. 377.

It is true, as held in Coe v. Talcott, 130 Neb. 32, 263 N. W. 596, and Kucaba v. Kucaba, 146 Neb. 116, 18 N. W. 2d 645, that a certificate of acknowledgment in proper form can only be impeached by clear, satisfactory, and convincing evidence that its recitals are false, and the burden is ordinarily upon the party alleging the same to so prove it, but, as heretofore stated, the evidence in this record so establishes that fact.

In the light of such applicable rules, we have examined the record. Concededly, the property involved was defendants' homestead. On April 27, 1949, defendant wife signed an unacknowledged contract listing the property for sale, exclusively for 30 days, with a real estate agent. The sale price stated therein was $11,500. Thereafter, the agent contacted plaintiff, who, on May 4, 1949, signed a uniform purchase contract offering to purchase the property for $10,300, out of which amount $300, or at least $260, was to be the agent's commission. On that

date the agent informed defendant wife of such offer, but she refused to accept or sign the contract until her husband came home in the evening. Later she called the agent and deferred any action until her daughter returned to the city. On May 6, 1949, the agent called at defendants' home with the contract, where, about 10 a. m. they signed the same and the agent delivered to them a carbon copy thereof, together with a check for $1,000, representing down payment. The agent was a notary public, but defendants were not then so informed by the agent, and they did not understand that he was present for the purpose of taking their acknowledgment. In fact, their acknowledgment was not in any sense then taken, and the certificate and official seal of the notary public were not then placed upon either the original or the carbon copy. It never was placed upon the carbon copy. The agent, as a witness for plaintiff, testified substantially that after the contract was signed, the agent picked up the papers, and as he was still in the same room defendant husband suggested that the contract "should be notarized" whereupon the agent said to him that "it didn't make any difference as far as they were concerned" but "if Trowbridge would kick on it and he wanted the notary seal put on I would put it on."

The agent then took the contract to plaintiff, who, after a conversation with his secretary, one F. H. Taylor, said "he wanted the seal on—he wanted it notarized." As stated by the agent, "Well, Trowbridge asked for it, and him and Taylor got into a huddle about it and I took the contract over and they said it wasn't no good. *Two smart guys like Trowbridge and Taylor—you couldn't get by with a contract that wasn't notarized.*" (Italics supplied.)

It was then about 11 a. m., so the agent took the agreement back to his office "saying that he would acknowledge it and return it." There, at about 1 p. m., without having ever contacted defendants again, the agent filled out the acknowledgment and put his official

seal on the original, which he delivered to plaintiff's secretary at about 2:15 p. m.

The foregoing material evidence appears generally and specifically in evidence adduced for plaintiff. However, defendant husband testified that he never made any statement of any kind to the agent about notarizing the instrument, and that nothing was ever said about it by the agent to him or anyone else, as stated by the agent. The defendant wife and defendants' daughter also testified that nothing ever was said in their presence and hearing about notarizing the instrument.

On May 25, 1949, defendant wife, 65 years old, ill and worried about losing and moving from their home, tendered back the down payment and elected to refuse to perform the agreement upon the ground that it was void and unenforceable for want of acknowledgment by both husband and wife, as required by the statute. In that connection, it should be said that there is competent evidence in the record from which a reasonable conclusion could be logically drawn that in fact the notary's official seal and acknowledgment were never placed upon the agreement until on or after May 25, 1949, although it bears the date of May 6, 1949, with a part of the word "May" written over a previous erasure. In that situation, plaintiff refused to permit defendants to rescind, and brought this action.

In the light of the evidence and applicable rules heretofore stated, this court concludes that the agreement was in fact never executed and acknowledged, as required by statute. It follows that the purported contract was void and unenforceable. Other propositions argued by counsel do not require discussion.

For the reasons heretofore stated, the judgment of the trial court should be and hereby is reversed and remanded with directions to enter a judgment in favor of defendants.

REVERSED AND REMANDED WITH DIRECTIONS.