**MESSERSMITH v. SMITH et al.**

No. 7380.

Supreme Court of North Dakota.

June 5, 1953.

Rehearing Denied Oct. 22, 1953.

Mackoff, Kellogg, Nuggli & Kirby, Dickinson, for appellant.

Eugene A. Burdick, Williston, for respondent.

MORRIS, Chief Justice.

This is a statutory action to quiet title to three sections of land in Golden Valley County. The records in the office of the register of deeds of that county disclose the following pertinent facts concerning the title: For some time prior to May 7, 1946, the record title owners of this property were Caroline Messersmith and Frederick Messersmith. On that date, Caroline Messersmith executed and delivered to Frederick Messersmith a quitclaim deed to the property which was not recorded until July 9, 1951. Between the date of that deed and the time of its recording the following occurred: On April 23, 1951, Caroline Messersmith, as lessor, executed a lease to Herbert B. Smith, Jr., lessee, which was recorded May 14, 1951. On May 7, 1951, Caroline Messersmith, a single woman, conveyed to Herbert B. Smith, Jr., by mineral deed containing a warranty of title, an undivided one-half interest in and to all oil, gas and other minerals in and under or that may be produced upon the land involved in this case. This deed was recorded May 26, 1951. On May 9, 1951, Herbert B. Smith, Jr., executed a mineral deed conveying to E. B. Seale an undivided one-half interest in all of the oil, gas and other minerals in and under or that may be produced upon the land. This deed was also recorded in the office of the Register of Deeds of Golden Valley County, on May 26, 1951. Seale answered plaintiff's complaint by setting up his deed and claiming a one-half interest in the minerals as a purchaser without notice, actual or constructive, of plaintiff's claim. To this an-

swer the plaintiff replied by way of a general denial and further alleged that the mineral deed by which Seale claims title is void; that it was never acknowledged, not entitled to record and was obtained by fraud, deceit and misrepresentation. The defendant Herbert B. Smith, Jr., defaulted.

For some time prior to the transactions herein noted, Caroline Messersmith and her nephew, Frederick S. Messersmith, were each the owner of an undivided one-half interest in this land, having acquired it by inheritance. The land was unimproved except for being fenced. It was never occupied as a homestead. Section 1 was leased to one tenant and Sections 3 and 11 to another. They used the land for grazing. One party had been a tenant for a number of years, paying $150 a year. The amount paid by the other tenant is not disclosed. The plaintiff lived in Chicago. Caroline Messersmith lived alone in the City of Dickinson where she had resided for many years. She looked after the renting of the land, both before and after she conveyed her interest therein to her nephew. She never told her tenants about the conveyance.

On April 23, 1951, the defendant Smith, accompanied by one King and his prospective wife, went to the Messersmith home and negotiated an oil and gas lease with Miss Messersmith covering the three sections of land involved herein. According to Miss Messersmith, all that was discussed that day concerned royalties. According to the testimony of Mr. Smith and Mr. King, the matter of the mineral deed was discussed.

Two or three days later, Smith and King returned. Again the testimony varies as to the subject of conversation. Miss Messersmith said it was about royalties. Smith and King say it was about a mineral deed for the purchase of her mineral rights. No agreement was reached during this conversation. On May 7, 1951, Smith returned alone and again talked with Miss Messersmith. As a result of this visit, Miss Messersmith executed a mineral deed for an undivided one-half interest in the oil, gas and minerals under the three sections of land. Smith says this deed was acknowledged before a notary public at her house. She says no notary public ever appeared there. She also says that Smith never told her she was signing a mineral deed and that she understood she was signing a "royalty transfer." The consideration paid for this deed was $1,400, which is still retained by Miss Messersmith. After leaving the house Smith discovered a slight error in the deed. The term "his heirs" was used for the term "her heirs." He returned to the home of Miss Messersmith the same day, explained the error to her, tore up the first deed, and prepared another in the same form, except that the error was corrected. According to Smith's testimony, he took the second deed to the same notary public to whom Miss Messersmith had acknowledged the execution of the first deed and the notary called Miss Messersmith for her acknowledgment over the telephone and then placed on the deed the usual notarial acknowledgment, including the notary's signature and seal. The notary, who took many acknowledgments about that time, has no independent recollection of either of these acknowledgments. It is the second deed that was recorded on May 26, 1951, and upon which the defendant, E. B. Seale, relied when he purchased from the defendant, Herbert B. Smith, Jr., the undivided one-half interest in the minerals under the land in question.

The trial court reached the conclusion that the transaction resulting in the mineral deeds to Smith was not fraudulent and he so found. While Miss Messersmith was an elderly woman, 77 years of age, she appears to have been in full possession of her faculties and a person of considerable business experience. She owned a number of other farms upon which she had executed oil and gas leases previous to the time she made the lease of this land to Smith. Although Miss Messersmith is very positive that she did not know she signed a mineral deed, she is very vague as to what she thought she was signing. She knew she had already signed an oil and gas lease to all of the land in favor of

Smith, so she does not contend that she thought she was signing another lease. On cross-examination she was asked:

"Q. Well, will you tell the Court what you thought you were signing? A. Thought that I was selling a certain percentage of it on royalty. That's what I thought."

A day or two after signing the deed she wrote to the plaintiff, her nephew, and he wrote a letter back by air mail. She did not send him a copy of the mineral deed. In fact, there is nothing in the record that indicates a copy was ever made. She testifies that Smith tore up the first deed in her presence and put the pieces in his pocket. He took the second deed with him. Without consultation with anyone, except the correspondence with her nephew, she wrote the defendant Smith on May 26, 1951, as follows:

"My dear Mr. Smith.
"Am sorry to say that, I didn't have the right to sell that mineral right to you. "I should have consulted my nephew in any deals like this. He is ½ owner in this land and should have been consulted. He is very much put out about it and when I stop to give it a serious thought I realize that he should have had a voice in this deal and of course signed the deed with me. I would like to buy it back. The money $1400⁰⁰ is here and what ever expense connected with it, shall be sent you.

"Don't think that there are any other deals on. There are not.

"I am anxious to get this fixed right, so there will be peace in my home. My nephew, 40 years old, feels that he ought to have some voice in this business, and now realizing this I take all blame. As far as the leasing is concerned that is O.K. with him. But when it comes to giving an oil gas & mineral deed without his consent that is different. You will understand. "Let me hear from you immeaditly. I realize that he should have been consulted and that he should have signed with me, if he had favored it."

This letter indicates that she fully understood that she signed a mineral deed. She complains of no fraud in its procurement.

 The trial court found "that such deeds, or either of them, were not procured through fraud or false representation." The evidence does not warrant this court in disturbing that finding.

The determination that the mineral deed from Caroline Messersmith to Herbert B. Smith, Jr., was not fraudulently obtained by the grantee does not mean that the defendant, who in turn received a deed from Smith, is entitled to prevail as against the plaintiff in this action. At the time Miss Messersmith executed the mineral deed she owned no interest in the land, having previously conveyed her interest therein to the plaintiff. Smith in turn had no actual interest to convey to the defendant Seale. If Seale can assert title to any interest in the property in question, he must do so because the plaintiff's deed was not recorded until July 9, 1951, while the deed from Caroline Messersmith to Smith and the deed from Smith to the defendant Seale were recorded May 26, 1951, thus giving him a record title prior in time to that of the plaintiff. Section 47-1907, NDRC 1943, contains this provision:

"An instrument entitled to be recorded must be recorded by the register of deeds of the county in which the real property affected thereby is situated."

Section 47-1908, NDRC 1943, provides:

"An instrument is deemed to be recorded when, being duly acknowledged or proved and certified, it is deposited in the register's office with the proper officer for record."

The defendant Seale asserts that priority of record gives him a title superior to that of the plaintiff by virtue of the following statutory provision, Section 47-1941, NDRC 1943:

"Every conveyance of real estate not recorded as provided in section

47–1907 shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any part or portion thereof, whose conveyance, whether in the form of a warranty deed, or deed of bargain and sale, or deed of quitclaim and release, of the form in common use or otherwise, first is recorded, or as against an attachment levied thereon or any judgment lawfully obtained, at the suit of any party, against the person in whose name the title to such land appears of record, prior to the recording of such conveyance. The fact that such first recorded conveyance of such subsequent purchaser for a valuable consideration is in the form, or contains the terms, of a deed of quitclaim and release aforesaid, shall not affect the question of good faith of the subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof."

Section 47–1945, NDRC 1943, in part, provides:

"The deposit and recording of an instrument proved and certified according to the provisions of this chapter are constructive notice of the execution of such instrument to all purchasers and encumbrancers subsequent to the recording."

As against the seeming priority of record on the part of Seale's title, the plaintiff contends that the deed from Caroline Messersmith to Smith was never acknowledged and, not having been acknowledged, was not entitled to be recorded, and hence can confer no priority of record upon the grantee or subsequent purchasers from him.

■ It may be stated as a general rule that the recording of an instrument affecting the title to real estate which does not meet the statutory requirements of the recording laws affords no constructive notice. J. I. Case Co. v. Sax Motor Co., 64 N.D. 757, 256 N.W. 219; First National Bank v. Casselton Realty & Investment Co., 44 N.D. 353, 175 N.W. 720, 29 A.L.R. 911. The applicability of the rule is easily determined where the defect appears on the face of the instrument, but difficulty frequently arises where the defect is latent. Perhaps the most common instance of this nature arises when an instrument is placed of record bearing a certificate of acknowledgment sufficient on its face despite the fact that the statutory procedure for acknowledgment has not been followed. See Annotations 19 A.L.R. 1074; 72 A.L.R. 1039.

■ The certificate of acknowledgment on the mineral deed to Smith, while it is presumed to state the truth, is not conclusive as to the fact of actual acknowledgment by the grantor. Trowbridge v. Bisson, 153 Neb. 389, 44 N.W.2d 810; 1 C.J.S., Acknowledgments, § 124; 1 Am.Jur., Acknowledgments, Section 142; 45 Am.Jur., Records and Recording Laws, Section 108; Thompson on Real Property, Permanent Edition, Section 4091; 1 Am.Jur., Acknowledgments, Section 148; Annotations 41 L.R.A.,N.S., 1173, 54 Am.St.Rep. 153.

In Severtson v. Peoples, 28 N.D. 372, 148 N.W. 1054, 1055, this court, in the syllabus, said:

"4. A certificate of acknowledgment, regular on its face, is presumed to state the truth, and proof to overthrow such certificate must be very strong and convincing, and the burden of overthrowing the same is upon the party attacking the truth of such certificate.

"5. To constitute an acknowledgment, the grantor must appear before the officer for the purpose of acknowledging the instrument, and such grantor must, in some manner with a view to giving it authenticity, make an admission to the officer of the fact that he had executed such instrument.

"6. Where, in fact, the grantor has never appeared before the officer and acknowledged the execution of the in-

strument, evidence showing such fact is admissible, even as against an innocent purchaser for value and without notice."

It avails the purchaser nothing to point out that a deed is valid between the parties though not acknowledged by the grantor—see Bumann v. Burleigh County, 73 N.D. 655, 18 N.W.2d 10—for Caroline Messersmith, having previously conveyed to the plaintiff, had no title. The condition of the title is such that Seale must rely wholly upon his position as an innocent purchaser under the recording act.

■ Before a deed to real property can be recorded its execution must be established in one of the ways prescribed by Section 47-1903, NDRC 1943. No attempt was made to prove the execution of this deed other than "by acknowledgment by the person executing the same". It is the fact of acknowledgment that the statute requires as a condition precedent to recording. Subsequent sections of Chapter 47-19, NDRC 1943, prescribe before whom and how proof of the fact of acknowledgment may be made. A general form of certificate of acknowledgment is set forth in Section 47-1927. The certificate on the mineral deed follows this form and states:

"On this 7th day of May, in the year 1951, before me personally appeared Caroline Messersmith, known to me to be the person described in and who executed the within and foregoing instrument, and acknowledged to me that she executed the same."

But Caroline Messersmith did not appear before the notary and acknowledge that she executed the deed that was recorded. In the absence of the fact of acknowledgment the deed was not entitled to be recorded, regardless of the recital in the certificate. The deed not being entitled to be recorded, the record thereof did not constitute notice of its execution, Section 47-1945, or contents, Section 47-1919. The record appearing in the office of the register of deeds not being notice of the execution or contents of the mineral deed, the purchaser from the grantee therein did not

become a "subsequent purchaser in good faith, and for a valuable consideration" within the meaning of Section 47-1941, NDRC 1943.

In this case we have the unusual situation of having two deeds covering the same property from the same grantor, who had no title, to the same grantee. The only difference between the two was a minor defect in the first deed, for which it was destroyed. The evidence is conflicting as to whether or not the first deed was acknowledged. The second deed clearly was not. It is argued that the transaction should be considered as a whole, with the implication that if the first deed was actually acknowledged, the failure to secure an acknowledgment of the second deed would not be fatal to the right to have it recorded and its efficacy as constructive notice. We must again point out that the right which the defendant Seale attempts to assert is dependent exclusively upon compliance with the recording statutes. His claim of title is dependent upon the instrument that was recorded and not the instrument that was destroyed. Assuming that Smith is right in his assertion that the first deed was acknowledged before a notary public, we cannot borrow that unrecorded acknowledgment from the destroyed deed and, in effect, attach it to the unacknowledged deed for purposes of recording and the constructive notice that would ensue.

In Dixon v. Kaufman, N.D., 58 N.W.2d 797, we sustained the title to nonhomestead lands of purchasers for value and without notice whose title rested upon a deed bearing a certificate of acknowledgment regular on its face but which in fact had not been acknowledged by the grantors. In that case the grantors were the actual owners of the property at the time they signed the deed and as to nonhomestead property the delivery of the deed without acknowledgment was sufficient to pass title which the grantees then had. This title was then purchased by defendants who paid the value therefor in good faith and without notice of any claimed defects in the execution of the deed. The deed executed by the plaintiffs which they sought to attack con-

veyed a title which, at the most, was voidable. In that case plaintiffs sought relief from the consequences of their own acts which would result in loss to innocent parties. The situation here is entirely different. The plaintiff seeks relief from the consequences of the acts of a third party, Caroline Messersmith, who, after deeding to the plaintiff her entire interest in the property, executed the mineral deed to Smith. This deed contained a warranty but it actually conveyed no title. As a conveyance it was good between the parties only in theory, for the grantor had nothing to convey. For the loss which resulted from her acts, the plaintiff in this case is not to blame. His failure to record his deed will not defeat the title which he holds unless there appears against it a record title consisting of instruments executed and recorded in the manner prescribed by our recording statutes. The title asserted by the defendant Seale does not meet these requirements and the trial court erred in rendering judgment in his favor.

The judgment appealed from is reversed.

GRIMSON, CHRISTIANSON, BURKE, and SATHRE, JJ., concur.

On Petition for Rehearing.

MORRIS, Chief Justice.

The respondent has petitioned for a rehearing and additional briefs have been filed. From the cases cited and statements of counsel, it appears that there may be a misapprehension concerning the scope of our opinion. We would emphasize the fact that at the time Caroline Messersmith signed and delivered the deed to Herbert B. Smith, Jr., she had no title to convey. Smith therefore obtained no title to convey to E. B. Seale who, as grantee of Smith, claims to be an innocent purchaser. The title had already been conveyed to Frederick Messersmith. The deed to Smith had never been acknowledged and was therefore not entitled to be recorded, although it bore a certificate of acknowledgment in regular form. Seale, whose grantor had no title, seeks through the operation of our recording statutes to divest Frederick Messersmith of the true title and establish a statutory title in himself.

We are here dealing with a prior unrecorded valid and effective conveyance that is challenged by a subsequent purchaser to whom no title was conveyed and who claims that the recording laws vest title in him by virtue of a deed that was not acknowledged in fact and therefore not entitled to be placed of record. This situation differs materially from a case where an attack is made by a subsequent purchaser on a prior recorded deed which actually conveyed title to the grantee but was not entitled to be recorded because of a latent defect. The questions presented by the latter situation we leave to be determined when they arise.

The petition for rehearing is denied.

SATHRE, GRIMSON, BURKE, and CHRISTIANSON, JJ., concur.