**J. S. GRAHAM, as Trustee of Queen City Oil and Refining Company, a Corporation, Bankrupt, Plaintiff,**

v.

**FIRST NATIONAL BANK OF DICKINSON, NORTH DAKOTA, as Trustee, Defendant.**

Civ. No. 142.

United States District Court
D. North Dakota,
Southwestern Division.

May 22, 1959.

Norbert J. Muggli, Mackoff, Kellogg, Muggli & Kirby, Dickinson, N. D., for plaintiff.

Reichert & Reichert, Dickinson, N. D., and Edmund W. Hollstein, Rushville, Neb., for defendant.

REGISTER, Chief Judge.

1. The action and proceedings taken in Denver, Colorado, on May 25, 1953, were prior to corporate existence of the corporation here involved. It clearly appears that the corporation did not come into being until May 29, 1953. Section 10–0208, N.D.R.C., 1943. Without going into detail, it appears to the satisfaction of the Court that, with reference to the said bonds and Trust Indenture, there was non-compliance with the statutory requirements of North Dakota, as set forth in the "Summary of Statutory Breaches" contained in Plaintiff's brief, commencing on page 38.

However, in the Court's opinion, the action and proceedings referred to were not void. It will be noted that the violation here involved, of the requirements of Section 138 of the North Dakota Constitution, is not, under the express provisions thereof, void. It has been judicially determined that the violation of, or non-compliance with, statutory requirements does not necessarily have the effect of making obligations void. See: Mann v. Mann, 57 N.D. 550, 223 N.W. 186; Bryan v. Northwest Beverages, Inc., 69 N.D. 274, 285 N.W. 689, 123 A.L.R. 717.

2. A corporation is not liable upon any contract which a promoter attempts to make for it unless it becomes so by its own act after its organization is completed.

"Until a certificate of incorporation has been issued or the articles of incorporation filed, according to the statute, a corporation has no being, franchise, or faculties. Its promoters or those engaged in bringing it into existence are in no sense identical with the corporation; nor do they represent it in any relation of agency or have any authority to enter into preliminary contracts binding upon the corporation. Therefore, since a corporation cannot, before its organization, have agents, contract for itself, or be contracted with, it is not liable upon any contract which a promoter attempts to make for it prior to its organization unless the obligation is assumed by its own act after organization is completed." 13 Am.Jur., Sec. 100, p. 245. The foregoing states the general rule.

A corporation "is not liable on any contract which a promoter attempts to make for it unless it becomes so by its own act after its incorporation is completed." Clifton v. Tomb, 4 Cir., 21 F.2d 893. Also see: Hellman v. United States, 44 F.2d 83, 70 Ct.Cl. 498; 123 A.L.R. 726 et seq.

However, a corporation may be held liable upon a promoter's contract on the theory of ratification. "If, after it comes into existence, a corporation expressly or impliedly ratifies a contract made for its benefit by its organizers before it was formed, such contract becomes the contract of the corporation and it is entitled to the benefits thereof and is liable thereon." Boatright v. Steinite Radio Corporation, 10 Cir., 46 F.2d 385, 388.

Other cases have recognized as valid the rule that liability on a promoter's contract may be imposed upon corporations on the theory of "adoption".

"Contracts entered into with the promoter of a corporation thereafter to be created, with the intention that the corporation, when formed, shall be bound thereby, may subsequently be 'adopted' by the corporation. Gardiner v. Equitable Office Bldg. Corp., 2 Cir., 273 F. 441, 448, 17 A.L.R. 431. Whether the agree-

ment be regarded as a mere offer to the corporation, which after formation it may accept, or as a binding contract between the parties until by novation the obligation of the corporation is substituted for that of the promoter, is not material to the question of adoption, which may take place in either case." Boyd v. Michael, 2 Cir., 22 F.2d 480, 482.

In the case of Villar & Co., Inc. v. Conde, 1 Cir., 30 F.2d 588, 589, reference is made with approval to terminology "that the corporation by its subsequent acts ratified and confirmed the contract" and "in ruling that a corporation may adopt and become bound by a contract entered into by promoters in its behalf the court did not err".

Whether the word "ratified", or "adopted" or "confirmed" or the term "by novation" be used, apparently the effect is the same.

■ Of course, it is not essential that the promoter's contract be ratified or adopted or confirmed by a formal resolution of the Board of Directors.

"A corporation may expressly or impliedly assume the obligations of a contract which its promoters made for its benefit prior to the date of its organization; and any unequivocal act of recognition will suffice for that purpose." Wilson v. Harburney Oil Co., 10 Cir., 89 F.2d 211, 213. Also see: Boyd v. Michael, supra.

Neither a formal vote either of the stockholders or of the directors taken or recorded, is essential. Bryan v. Northwest Beverages, Inc., supra.

■ It is likewise generally held that if a corporation, with knowledge of a contract, accepts the benefits thereof, it will be required to perform its obligations; acceptance of the benefits binds it to performance of the obligations. Boyd v. Michael, supra; Wilson v. Harburney Oil Co., supra; Federal Land Value Ins. Co. v. Taylor, 9 Cir., 56 F.2d 351; In re Ideal Steel Wheel Co., Inc., 2 Cir., 25 F.2d 651.

"It is, however, equally well established, as those cases show, that a corpo-

ration, with knowledge of a promoter's contract, in accepting the benefits therefrom, takes it subject to the burdens that go with such contract. The rule is thus stated in Cook on Corporations, 7th Ed., Vol. 3, p. 2411: 'A corporation, accepting the benefits of the contract of its incorporators, must accept the burden, and a promoter's contract, which has been ratified or adopted by the corporation with knowledge of such contract, may be enforced against it.' By the great weight of authority in this country, a promoter's contract, made on behalf or for the benefit of a projected corporation, and not ultra vires, may, with knowledge of the facts, be adopted by the corporation, either expressly or impliedly, after it comes into existence." Bryan v. Northwest Beverages, Inc., supra [69 N.D. 274, 285 N.W. 692].

A corporation which accepts the benefits of a contract must be held to be charged with its burdens. "The liability, in such cases, depends upon an implied contract, or upon estoppel." Annotation, 17 A.L.R. 452, p. 477.

■ Therefore, regardless of the theory upon which the result is based—whether that of ratification, adoption, novation, or a continuing offer, acceptance of the benefits has the effect of binding the corporation to performance of the obligations of the contract. The "adoption" of such an agreement by the corporation after its formation may be implied by the acts or acquiescence of the corporation or its agent, without any express acceptance. 17 A.L.R. 477 et seq. It may be inferred from acts or acquiescence on the part of the corporation or its authorized agents. Gardiner v. Equitable Office Bldg. Corp., 2 Cir., 273 F. 441, 17 A.L.R. 431; Whitney v. Wyman, 101 U.S. 392, 25 L.Ed. 1050. In the instant case, the acceptance of the benefits, by the corporation, was clearly with knowledge of all the facts.

■ The Court is satisfied, and so finds, that in this case the directors and stockholders impliedly "ratified" the contract; with full knowledge of the facts, they "acquiesced in" the same, and gave

84

"subsequent recognition of the validity of the contract". Surely, by its conduct, the corporation would be estopped to deny the obligation of such bonds and Trust Indenture in a suit against the corporation for performance of those obligations. In this discussion the Court will not enumerate such acts of "acquiescence", "recognition", etc., as they are discussed in detail in Defendant's Memorandum Brief, pages 26 to 28, inclusive.

3. Section 35–0406, N.D.R.C., 1943, provides as follows:

"A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith for value, unless the original or an authenticated copy thereof is filed by depositing it in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is situated at the time of filing."

The Trust Indenture, Plaintiff's Exhibit 2, explicitly purports to be a chattel mortgage. Article Three, Section 3 thereof, provides in part that "All assets and property, real, personal or mixed of any kind or nature whatsoever now owned or which may hereafter be acquired by the Company shall be held and covered by the lien of this Indenture".

It is conceded that neither this Trust Indenture, nor an authenticated copy thereof, was ever filed as a chattel mortgage in the office of the register of deeds of the proper county. Therefore, under the express and specific provisions of the statute above quoted, the same is void "as against creditors and encumbrancers of the property in good faith for value". In view of the status of the plaintiff, it is void as against him.

It is true, as argued by counsel for plaintiff, that Section 35–0304, N.D. R.C., 1943, provides that one of the prerequisites for recording a mortgage of real property is that it contain "the post-office address of the mortgagee". The Supreme Court of this State has held that "if such mortgage was not receivable by the register of deeds because of failure to meet the statutory requirements, no constructive notice was given though the register of deeds received and filed it". Case Co. v. Sax Motor Co., 64 N.D. 757, 256 N.W. 219, 220; Messersmith v. Smith, N.D., 60 N.W.2d 276. The Trust Indenture states that party of the second part therein to be "The First National Bank of Dickinson, a National Banking Corporation, doing business at Dickinson, County of Stark, State of North Dakota". It is also true that such instrument does not, in so many words, state that the postoffice address of the party of the second part, is "Dickinson, County of Stark, State of North Dakota"; however, that is the clear purport of such words, and, in the Court's opinion, a contrary conclusion would be strained and unreasonable. This Court concludes that, as to such statutory requirement, the same was fulfilled. This conclusion does not appear to be contrary to the reasoning of the Supreme Court of North Dakota in the Messersmith case, supra.

4. Plaintiff, in its brief, states that "examination of authorities on this subject show that the intent of the annexor in making the annexation is the chief test for determining status of property as realty or personalty". P. 35. Counsel for defendant agrees that this is the correct statement as to the law. P. 31, Defendant's Brief. Specific, concise statements of such rule are likewise quoted in plaintiff's brief, pages 35 and 36, from 22 Am.Jur., p. 718, and 36 C.J.S. Fixtures § 2, p. 894, and will not be repeated here. That such rule is followed in North Dakota appears by the decision of the North Dakota Supreme Court in the case of Baldus v. Mattern, N.D., 93 N.W.2d 144.

Briefly, Mr. J. S. Graham, Trustee in Bankruptcy and plaintiff herein, testified that the oil tanks were not affixed to the soil, that they laid on sand, that their only attachment to the ground is through piping, that there is no firm fixation, that the pipes are attached by couplings—

ordinary pipe connections—and that the couplings are attached to the valves of the tanks. This is apparently a correct explanation and statement. "These large steel structures are bedded on a sand base so as to protect the steel bottoms of the tanks." Defendant's Brief, p. 31. Not only the tanks, but much of the various types of equipment and tools are listed on the various personal property tax returns—Plaintiff's Exhibits 6, 7, 8 and 9. Each of exhibits 6, 7 and 8 was signed on behalf of the corporation by its general manager and also by the assessor. Exhibit 9 was signed only by the assessor, and is similar to the other three. Hence, during the years 1954, 1955, 1956 and 1957, such property has been assessed as personal property.

■ It is very apparent that the property included and listed in such exhibits is not affixed in the ordinarily accepted sense of fixtures constituting realty. The affixing is not permanent in character. All thereof is readily removable. The property listed on the exhibits is certified to as being a correct schedule of "all personal property". Such action was on behalf of the corporation. It is the best and, in the Court's opinion, the most significant evidence as to the intent of the corporation; that is, that its intent was to treat such property as personal property. The Court so finds.

5. As heretofore stated in effect, the Court is of the opinion that the Trust Indenture is a first, valid and subsisting mortgage upon all of the real property of said corporation, but is void and of no effect as to the personal property as against the claims of the unsecured general creditors, represented by the plaintiff. Therefore, such bonded indebtedness shall be considered and treated as secured solely to the extent of the real property, and shall be considered and shall receive unsecured debt status as to all of said personal property.

6. That the plaintiff herein, the Trustee in Bankruptcy, may legally challenge and attack the validity of the proceedings and instruments heretofore referred to is apparently conceded by the defend-

ant. It is the understanding of the Court, as stated in Defendant's Trial Brief, p. 1, that this action was authorized by the Referee in Bankruptcy.

The Court appreciates the carefully prepared and exceedingly helpful briefs submitted by respective counsel.