In re Kent W. and Twila NIES, Debtors.

Wayne DREWES, as bankruptcy trustee for Kent W. Nies and Twila Nies, Plaintiff,

v.

SECURITY STATE BANK OF WISHEK, Defendant.

Bankruptcy No. 94–30841.

Adv. No. 95–7013.

United States Bankruptcy Court, D. North Dakota.

June 29, 1995.

Wayne Drewes, Trustee.

Tarek Howard and Kip Kaler, Fargo, ND, for plaintiff.

David L. Johnson, Fargo, ND, for defendant.

### MEMORANDUM & ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The Chapter 7 Trustee, Wayne Drewes (Trustee), commenced the above-entitled action by Complaint filed on March 7, 1995, seeking to avoid a security interest in specified real property acquired by virtue of a mortgage given by the debtors, Kent and Twila Nies (Nies), to the Security State Bank of Wishek (Bank). The Trustee essentially asserts that the Bank's mortgage is unenforceable and inferior to his status as a bona fide purchaser of real property under 11 U.S.C. § 544(a)(3) since the mortgage failed to provide an adequate statement as to the amount of indebtedness and, therefore, was not entitled to be recorded under § 35–03–04 of the North Dakota Century Code. In accordance with the aforementioned assertion, the Trustee further objects to the Bank's proof of claim in this case in the amount of $184,228.80 pursuant to § 502(b)(1), insofar as it purports to be a secured claim, and requests that this court void the Bank's lien pursuant to § 506(d). The Bank generally denies the allegations of the Complaint and contends that it has a valid and enforceable lien.

The matter directly before the court arises by cross-motions for summary judgment filed

by the Trustee and the Bank on May 19, 1995, and June 20, 1995, respectively pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Trustee and the Bank both concede that the case is ripe for summary adjudication since the material facts are undisputed. Having considered the arguments of counsel as set forth in the briefs submitted in connection with their respective motions for summary judgment as well as the accompanying affidavits and exhibits, the court finds the facts set forth herein material to the resolution of the case and makes the following conclusions of law:

## FACTUAL BACKGROUND

The debtors, Kent and Twila Nies, filed for protection under Chapter 7 of the United States Bankruptcy Code on September 30, 1994. Prior to filing the bankruptcy petition, the Nies and the Security State Bank of Wishek entered into a number of loan transactions whereby the Nies borrowed money from the Bank. The Nies executed a mortgage in favor of the Bank on September 13, 1993, in consideration of and as security for the outstanding indebtedness. *See* Exhibit A. The mortgage covered real estate the Nies owned in McIntosh County, North Dakota and was duly recorded by the register of deeds in the real estate records of the county recorder's office on September 15, 1993, at 9:00 a.m. The mortgage contained the correct legal description of the real estate and included the following statements with respect to the amount of indebtedness and the terms of interest:

> **Indebtedness.** The word "Indebtedness" means all principal and interest payable under the Note and any amounts expended or advanced by Lender to discharge obligations of Grantor or expenses incurred by Lender to enforce obligations of Grantor under this Mortgage, together with interest on such amounts as provided in this Mortgage. In addition to the Note, the word "Indebtedness" includes all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor, or any one or more of them, whether now existing or hereafter arising, whether related or unre-

lated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, absolute or contingent, liquidated or unliquidated and whether Grantor may be liable individually or jointly with others, whether obligated as guarantor or otherwise, and whether recovery upon such indebtedness may be or hereafter may become barred by any statute of limitations, and whether such indebtedness may be or hereafter may become otherwise unenforceable. Specifically, without limitation, this Mortgage secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Grantor, together with all interest thereon.

> **Note.** The word "Note" means the notes or credit agreements from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the notes or credit agreements. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

*Id.*

## CONCLUSIONS OF LAW

■ Section 544(a) of the United States Bankruptcy Code permits a trustee to avoid certain transfers or encumbrances on property of the bankruptcy estate. 11 U.S.C. § 544(a). Indeed, the Code vests the trustee with the rights of a bona fide purchaser of real property for value and permits the invalidation of security interests in real property which, although enforceable between the parties, are not properly perfected at the commencement of the case because the creditor has failed to fully comply with applicable state recording laws. *Id.* § 544(a)(3). The trustee's status as a hypothetical bona fide purchaser is therefore paramount to the rights of a holder of an unperfected security interest. A creditor whose security interest is avoided under § 544(a) is treated as a general unsecured creditor for bankruptcy purposes. *Armstrong v. Dakota W. Bank* (*In re Arithson*), 175 B.R. 313, 318 (Bankr. D.N.D.1994). *Accord LMS Holding Co. v. Core–Mark Mid–Continent, Inc.,* 50 F.3d 1520, 1523 (10th Cir.1995). A trustee's pow-

er to avoid security interests or encumbrances on property of the bankruptcy estate is, as previously intimated, derivative; consequently, it is substantive state law governing the property in question which is determinative of the issue of whether the trustee's status as a bona fide purchaser of real property is superior to the rights of a creditor. *Michael v. Martinson (In re Michael)*, 49 F.3d 499, 501 (9th Cir.1995); *Smith v. Mark Twain Nat'l Bank*, 805 F.2d 278, 284 (8th Cir.1986); *In re Arithson*, 175 B.R. at 318 (citing *Norwest Bank v. Bergquist (In re Rolain)*, 823 F.2d 198, 199 (8th Cir.1987)). Stated somewhat differently, § 544(a) does not confer on the trustee any greater rights than those accorded by the applicable law to a bona fide purchaser of real property.

In order to ascertain whether the Trustee's rights as a bona fide purchaser of real property from the debtor are paramount to the Bank's rights as a mortgage holder under North Dakota law, a number of statutory provisions governing the recordation and perfection of real estate mortgages must be examined together. The Trustee relies almost exclusively upon § 35–03–04 of the North Dakota Century Code as the statutory basis for his conclusion that the Bank's security interest in the subject real estate was not perfected:

> **35–03–04. Prerequisites for recordation—Post-office address of mortgagee or assignee—Description of indebtedness.** No mortgage of real property may be received for record by the register of deeds unless it contains the post-office address of the mortgagee *and an adequate statement as to the amount of indebtedness and the terms of interest....*

N.D.Cent.Code § 35–03–04 (1987) (emphasis added). The Trustee essentially argues that the language in the mortgage and accompanying definition of "indebtedness", which expressly references underlying promissory notes, does not constitute an "adequate statement as to the amount of indebtedness" within the meaning of the aforementioned section. Although the instrument has actually been recorded and in all other respects complies with the appropriate recording requirements, it is the absence of a specific and quantifiable *"amount"* of indebtedness from the mortgage which, in the Trustee's view, renders the instrument fatally defective. The Trustee asserts that such a specificity as to the amount of the indebtedness is a prerequisite to recordation in the first instance. Since the mortgage in question was not entitled to be recorded, the Trustee argues that it was never perfected and the Bank's position is inferior to the Trustee's status as a bona fide purchaser under § 544(a)(3).

The Trustee cites authority for the proposition that instruments not entitled to be recorded do not impart notice to subsequent bona fide purchasers under the recording acts despite the fact that they may have been actually recorded in the real estate records. *See, e.g., J.S. Graham v. First Nat'l Bank*, 175 F.Supp. 81, 84 (D.N.D.1959); *Messersmith v. Smith*, 60 N.W.2d 276, 280 (N.D. 1953); *J.I. Case v. Sax Motor Co.*, 256 N.W. 219, 220 (1934) ("It is clear that if such mortgage was not receivable by the register of deeds because of failure to meet the statutory requirements, no constructive notice was given though the register of deeds received it and filed it."); *Tenney Co. v. Thomas*, 61 N.D. 202, 237 N.W. 710, 712 (1931) (noting that if the statutory prerequisites to recordation are not fully complied with, the mortgage cannot be properly filed or serve to afford constructive notice); *Security State Bank v. Burnstad Farmers' Elevator Co.*, 60 N.D. 43, 232 N.W. 295, 296–97 (1930); *Stoffel v. Sullivan*, 49 N.D. 695, 193 N.W. 45, 46 (1923) ("The authorities are substantially unanimous that an instrument in the form of a ... mortgage, but which, for some reason ... is not entitled to be recorded, does not constitute constructive notice to subsequent purchasers or incumbrancers for value without actual knowledge. This rule has been announced many times by this court."); *First Nat'l Bank v. Casselton Realty & Inv. Co.*, 44 N.D. 353, 175 N.W. 720, 721–22 (1919); J. Philip Johnson, *Examining the Abstract of Title*, 46 N.D.L.Rev. 175, 177 (1969–70). *See also Flexter v. Woomer*, 46 Ill.App.2d 456, 197 N.E.2d 161, 162–63 (1964). *Cf.* 59 C.J.S. *Mortgages* § 262, at 329 (1949) ("If the record of a mortgage wholly fails to disclose the nature or amount of the debt which it is given to secure, it is not notice to subsequent

creditors, purchasers, or encumbrancers.... If it gives an imperfect or ambiguous description of the debt, or merely refers to some other document wherein the amount is shown, it is sufficient to put purchasers or lienors on inquiry as to the real consideration."). The Bank retorts by noting that the authorities cited by the Trustee construed a previous version of § 35–03–04 which has since been amended to require an *"adequate statement* as to the amount of indebtedness" rather than a *"complete description* of the indebtedness secured as to the amount" as was required prior to the section's amendment in 1985. *See* 1985 N.D.Laws ch. 382 § 1. The Bank maintains that a plain reading of the amended section requiring an "adequate" statement, combined with the purpose and legislative history of the amendment, militate against the specificity the Trustee argues is required for mortgage recordations.

The Bank contends that the term "indebtedness" as defined in the governing instrument which is expressly defined to include "all obligations, debts, liabilities, plus interest" of the debtors, is in fact an "adequate" statement as to the amount of indebtedness within the plain meaning of the statute given the present day reality of commercial transactions and real estate mortgages. The Bank further points out that the mathematical exactitude as to the amount of indebtedness that the Trustee argues should be applied is simply unworkable in modern day financing. The Bank asserts, and this court is inclined to agree, the North Dakota Legislature recognized the reality of modern financing and expressed its manifestation that the amount of indebtedness and interest need not be stated with specificity in a mortgage when it amended § 35–03–04 of the North Dakota Century Code in 1985. Indeed, the legislative history surrounding the 1985 amendment supports the construction the Bank urges should be applied:

The bill to amend the statute was introduced at the request of a lawyer from the City of Fargo and the Cass County Register of Deeds. In view of the fact that many of the mortgages recorded for record are adjustable and variable rate mortgages which do not include a specific rate of interest, and the newly created collateral mortgage does not state the amount or when due, Register of Deeds have a difficult time in determining whether the mortgage forms comply with Section 35–03–04 of the North Dakota Century Code.

A few years ago, compliance was usually quite easy as a real estate mortgage would secure a note in a precise amount with a precise invariable interest rate repayable in installments or at the end of a specified time. In this more complex era, rates of interest may be variable or adjustable and often calculated on a formula or tied to an index in such a way as it is difficult to state a beginning rate.

The Register of Deeds customarily expects interest rates in set terms and could easily determine whether a mortgage was acceptable for recordation. The "when due" provisions of existing law have also become much more difficult to state simply. This is particularly true of a mortgage intended to cover future advances or a collateral mortgage which secures a line of credit. The original legislation was passed in the 1920's and the purposes of the amendment is to allow the new mortgage instruments to be filed for record.

H.B. 1297, 49th Leg. (1985) (remarks of James D. Schlosser). The court need not, however, reach the conclusion in this case that the statement in the mortgage with respect to the amount of indebtedness is adequate within the meaning of § 35–03–04.

The plain and unambiguous language of the Recording Act itself, embodied in § 47–19–41 of the North Dakota Century Code and apparently either ignored or overlooked by both of the parties to this proceeding, is dispositive of the issues in this case. Section 47–19–41 of the North Dakota Century Code, the very section of the Century Code from which a bankruptcy trustee derives his hypothetical status as a bona fide purchaser, provides in pertinent part that:

**47–19–41. Effect of not Recording— Priority of first record—Constructive notice—Limitation and validation.—**Every conveyance of real estate not recorded shall be void as against any subsequent

purchaser in good faith, and for a valuable consideration, of the same real estate, or any part or portion thereof whose conveyance, whether in the form of a warranty deed, or ... otherwise, first is deposited with the proper officer for record and subsequently recorded, *whether entitled to record or not,* or as against an attachment levied thereon or any judgment lawfully obtained, at the suit of any party, against the person in whose name the title to such land appears of record, prior to the recording of such conveyance. The fact that such first deposited and recorded conveyance of such subsequent purchaser for a valuable consideration is in the form, or contains the terms, of a deed of quitclaim and release aforesaid, shall not affect the question of good faith of the subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof. This section shall be legal notice to all who claim under unrecorded instruments that prior recording of later instruments not entitled to be recorded may nullify their right, title, interest or lien, to, in or upon affected real property. *No action affecting any right, title, interest or lien, to, in or upon real property shall be commenced or maintained or defense or counterclaim asserted or recognized in court on the ground that a recorded instrument was not entitled to be recorded. The record of all instruments whether or not the same were entitled to be recorded shall be deemed valid and sufficient as the legal record thereof.*

N.D.Cent.Code § 47–19–41 (1978) (emphasis added). Similarly, § 47–19–08 of the North Dakota Century Code provides that "[a]n instrument is deemed to be recorded when, *whether entitled to record or not,* it is deposited with the proper officer for record, if such instrument is subsequently recorded." *Id.* § 47–19–08 (emphasis added). *See also id.* §§ 47–19–19, 47–19–45, 35–03–07 (imparting constructive notice of properly recorded in-

struments). Section § 47–19–41 (as well as § 47–19–08) was specifically amended and reenacted in 1959 to, in effect, safeguard against challenges to a mortgage holder's perfected status based upon an argument similar to that which the Trustee advances in this case that the instrument was not entitled to be recorded. *Compare* N.D.Cent.Code §§ 47–19–41, 47–19–08 (1943), *with* N.D.Cent.Code §§ 47–19–41, 47–19–08 (1978). Consequently, the Trustee's reliance upon the above-referenced authorities in this case is misplaced as they *all* rely upon statutory provisions which pre-date the 1959 amendments to the Recording Act.[1] *See generally* Robert L. Stroup II, *The Unreliable Record Title,* 60 N.D.L.Rev. 203, 204–05 & n. 9 (1984) (noting the legislative reversal of North Dakota Supreme Court decisions such as *Messersmith v. Smith,* 60 N.W.2d 276 (N.D.1953)). Moreover, although mortgage holders must certainly comply with the statutory requirements contained in Title 35 of the North Dakota Century Code as a prerequisite to being "received" for recordation, *see* N.D.Cent.Code § 47–19–04 (1978), the 1959 amendments to the Recording Act make it abundantly clear that § 35–03–04 is simply no longer an independent basis from which liens may be voided by a trustee in bankruptcy when the mortgage instrument has been *actually* recorded.

Accordingly, and for reasons stated, the objection of Wayne Drewes, bankruptcy trustee, to the Bank's proof of claim is in all things OVERRULED and his motions for summary judgment and for lien avoidance are in all things DENIED. The cross-motion for summary judgment filed by defendant, Security State Bank of Wishek, is GRANTED and the Complaint of Wayne Drewes is in all things dismissed.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

1. The Trustee's reliance on the *Kingsley* line of cases is also misplaced in that the courts in the trilogy of decisions, *see Kingsley v. First Am. Bank.,* 73 B.R. 767 (Bankr.D.N.D.), *rev'd,* 92 B.R. 898 (D.N.D.1987), *rev'd and remanded* 865 F.2d 975 (8th Cir.1989), were required to analyze a different statutory provision, *see* N.D.Cent.Code § 35–05–04 (1980), which by its express terms declared *"invalid"* a security agreement covering specific crops if it claimed a security interest in other personal property.