In re Bernard L. ZAPTOCKY, Gloria J. Zaptocky, Debtors.

David O. Simon, Chapter 7 Trustee, Plaintiff,

v.

Bernard L. Zaptocky et al., Defendants.

Bankruptcy No. 98–13062. Adversary No. 98–1206.

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

Nov. 20, 1998.

---

Stephen D. Hobt, Cleveland, Ohio, for plaintiff.

Amelia A. Bower, Cleveland, Ohio, for Chase Manhattan Bank.

Ronald A. DeVito, Weltman, Weinberg & Reis Co., Cleveland, Ohio, for Chase Manhattan Bank.

Jonathan P. Blakely, Cleveland, Ohio, for defendant/debtors.

David O. Simon, Cleveland, Ohio, trustee.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter came before the Court on the Trustee's complaint to determine the priority, validity, and extent of liens and to set aside the mortgage of the Defendant, Chase Manhattan Bank N.A. ("Chase") as provided under 11 U.S.C. § 544(a)(1) and § 5301.01 O.R.C. The dispositive facts in this case are not in dispute, except on the issue of which individuals were present at a mortgage signing on February 7, 1997. The parties have stipulated as follows:

1. Prior to February 7, 1997 the subject mortgage on the Debtor's personal residence was with NationsBank in an amount of $74,987.00. Upon refinancing, that mortgage was paid off by Chase Bank.

2. The subject Mortgage was signed by the Debtors on February 7, 1997 at their residence.

3. The Mortgage was duly recorded.

4. The Debtors are current on their mortgage payments and desire to maintain their ownership of their residence.

5. The balance due to Bank One on the Second Mortgage is $23,668.00

6. The balance due Chase Bank is $120,000.00

Following a trial proceeding and an examination of the record, generally, the following additional findings and conclusions are hereby made.

## JURISDICTION

The Court acquires core matter jurisdiction pursuant to 28 U.S.C. §§ 157(a), 157(b) and § 1334(b), and General Order Number 84 of this District.

## FACTS

On February 7, 1997, the Debtors executed a real estate mortgage ("Mortgage") with Chase for the purpose of securing a loan in the principal amount of $120,700.00. (Exhibit 3). On the Mortgage appears the signatures of Bernard L. and Gloria J. Zaptocky ("The Debtors") and the signatures of one Gary Williams ("Williams") and one Taylor Lloyd ("Lloyd") as witnesses. (Exhibit 3–5). The Mortgage also contains an acknowledgment by the notary public, Williams (Id.).

At trial, the Trustee presented the testimony of both Debtors. The testimony given by Bernard Zaptocky and Gloria Zaptocky was credible. Gloria Zaptocky testified that, on the evening of February 7, 1997, "around dinner time", she and her husband executed the Mortgage in their home while sitting at their dining room table. She further testified that the only individuals present at the February 7, 1997 closing were herself, her husband, and Williams. Although she was unable to identify Williams in the courtroom, she knows that he was present at their home that evening in question because he wrote down his name and telephone number on a folder. Further, she testified that, while her mother-in-law was present at the Zaptocky's home that evening, neither her mother-in-law nor any other individual was present in their dining room other than herself, her husband and Williams. Finally, she testified that she

did not know a Lloyd Taylor and further that Lloyd was not in the Zaptocky's home on February 7, 1997. Bernard Zaptocky's testimony was consistent with Gloria Zaptocky's testimony.

Chase presented the testimony of Williams, the notary and a witness appearing on the Mortgage. Williams testified that on February 7, 1997, he was a "Closer" for First Service Title Agency Inc. His signature appears as the notary and as a witness on the Mortgage, and the signature of an additional witness, Lloyd Taylor, appears on the Mortgage. He had no independent recollection of the events surrounding the signing of the Mortgage nor did he recognize the Debtors. Significantly, he did not know a Lloyd Taylor and testified that Taylor was not an employee of First Service Title Agency. He testified that the company policy has always been that at every signing there must present two witnesses and that he would not have closed the loan and notarized the document without having another witness present. Williams testified that loans are closed at a time and place of the borrower's convenience and that loans are closed primarily at the borrower's residence or workplace. He further testified that the Closer does not normally bring an additional witness to the borrower's residence but that the Closer either finds another witness at the place of closing or refuses to close the transaction. Lastly he testified that he had no personal recollection whether there were two witnesses present at the February 7, 1997 signing. However, he testified that he always followed the company policy.

## ISSUE

Whether the subject mortgage constitutes a voidable interest against the Debtors' bankruptcy estate?

## DISCUSSION

I. Whether the Mortgage complied with the statutory requirements of O.R.C. § 5301.01.

■ Ohio Revised Code Section 5301.01 provides that;

A deed, mortgage, land contract as referred to in division (B)(2) of section 317.08

of the Revised Code, or lease of any interest in real property and a memorandum of trust as described in division (A) of section 5301.255 of the Revised Code shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease or shall be signed by the settlor and trustee in the case of a memorandum of trust. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the settlor and trustee, in the presence of two witnesses, who shall attest the signing and subscribe their names to the attestation. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the settlor and trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgment and subscribe his name to the certificate of the acknowledgment.

ORC § 5301.01. The dispositive issue is not a novel one. The court in *Citizens Nat. Bank in Zanesville v. Denison,* 165 Ohio St. 89, 133 N.E.2d 329 (Ohio 1956) held that an improperly executed mortgage is not entitled to be recorded and is not constructive notice as to subsequent mortgagees. Further, the court in *In re Hofacker,* 34 B.R. 604 (Bankr. S.D.Ohio) noted that "Ohio Courts have consistently held that a mortgage which is attested by only one witness is invalid. See e.g. *Wright v. Franklin Bank,* 59 Ohio St. 80, 51 N.E. 876 (1898)."

█ In *Coshocton National Bank v. Hagans,* 40 Ohio App. 190, 178 N.E. 330 (1931), the court addressed a dispute as to the validity of a mortgage. Finding that the mortgage on its face was apparently duly executed and recorded, the court concluded that "[the mortgage] carries with it a presumption of validity, and in order to destroy its effect as a mortgage, it must be shown to be defective by the contesters, and by a preponderance of the evidence."

The court observed that;

The notary and witnesses testified that they had no independent knowledge or recollection of the incidents surrounding its signing and acknowledgment, but they all testified that they never affixed their signatures to any instrument as witnesses or as notary unless the parties were present and signed in their presence. This is all that could reasonable be expected under the circumstances, and a positive statement of an inflexible rule always adhered to by a notary or witness must carry great weight in the consideration of their evidence.

*Coshocton,* 178 N.E. at 330. The court in *In re Todd,* 70 B.R. 204, 207 (Bankr.N.D.Iowa 1986) found a mortgage to be the correct statement of the obligation secured. The court, in support of its findings of fact stated;

It is generally accepted law that a presumption exists in favor of the correctness and genuineness of writings and the presumption also favors the validity and regularity of the documents. 31A C.J.S. Evidence S 150 (1964).... Presumptions, however, are subject to being rebutted. Going into the trial the Debtors [are] faced with the presumption that the mortgage was correct as stated and it was their burden to rebut this presumption. The burden of overcoming a presumption must be cured by evidence stronger than a mere preponderance, clear and convincing evidence is necessary. *See In re Givens' Estate,* 254 Iowa 1016, 119 N.W.2d 191, 194–95 (1963).... Where testimonial evidence is equally balanced at trial, as it was in this case, the party against whom the presumptions fall has not met its burden and cannot recover. 30 Am.Jur.2d Evidence S 1165 (1967).

*In re Todd,* 70 B.R. at 207; See also, *In re Adkins,* 28 B.R. 554, 558 (Bankr.N.D.Miss. 1983) (recognized presumption of regularity of an acknowledgment).

█ In the present proceeding, the Trustee has overcome the presumption of validity by clear and convincing evidence. The Mortgage was defectively executed in violation of O.R.C. § 5301.01, in that there was only one witness present at the February 7, 1997 signing. By virtue of the defect and the provisions of 11 U.S.C. § 544(a)(1), the Trustee is empowered to avoid the Mortgage. Thusly, grounds for lien avoidance have been demonstrated by the requisite standard of proof.

Although the Debtors and Williams were credible witnesses, the Debtors' credibility was more persuasive on the issue of who was present at the Debtors' home for the closing signatures for the following reasons:

1.  A home refinancing closing is an extraordinary event for a consumer.

2.  Where the closing occurs in the home of the refinancing applicant, it can be reasonably expected that the homeowners would have a greater cognizance of which individuals were in their personal residence for an extraordinary event such as a closing.

3.  The purported second witness, Lloyd Taylor, is not an individual known to either of the Debtors or by the notary Williams. In fact, Williams has no personal recollection of this particular closing.

4.  The Debtors testified, unequivocally, that no one by the name of Taylor was in their home on February 7, 1997 or at any other point in time.

5.  Taylor, according to Williams, was not an employee of First Service Title Agency.

6.  Gloria Zaptocky's mother was at the Debtor's residence on the closing date but did not participate in the execution of the closing documents.

■ The fact that a company has a policy which dictates the manner by which a certain activity is to occur is not conclusive evidence that such policy was adhered to in a specific case. This is especially so where, as here, there exists persuasive testimony to controvert an allegation that the policy was followed.

II.  Whether the Defendant's request that the Court apply the doctrine of equitable subrogation should be favorably construed.

■ Chase argues that if the Trustee is successful in proving that the February 7, 1997 mortgage is invalid, Chase should be subrogated to the position of the valid mortgage of Nationsbank which was paid by it and which was released of record upon the recordation of the mortgage deed of Chase. In support of its argument, Chase relies on *Straman v. Rechtine*, 58 Ohio St. 443, 51 N.E. 44 (1898). (Defendant's Trial Brief pg 3.)

Chase's reliance on the doctrine of subrogation is misplaced. The *Straman* court held in pertinent part:

Where money is loaned under an agreement that it shall be used in the payment of a lien on real estate, and it is so used, and the agreement is that the one who so loans the money shall have a first mortgage lien on the same lands to secure his money, and through some defect in the new mortgage, or oversight as to other liens, the money cannot be made on the last mortgage, the mortgagee has a right to be subrogated to the lien which was paid by the money so by him loaned, when it can be done without placing greater burdens upon the intervening lienholders than they would have borne if the old mortgage had not been released, *but not as against a bona fide lienholder who acquired his lien after the release of the old mortgage, without notice of such agreement and payment.* (Emphasis added).

At the moment of the filing of the Debtor's bankruptcy petition, the Trustee is the "bona fide lienholder" who acquires his lien after the release of the prior valid mortgage, without notice of the mortgage and payment. Section 544(a)(1) of the Bankruptcy Code [11 U.S.C. § 544(a)(1) ] permits a trustee to avoid a transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a hypothetical judicial lien holder as of the commencement of the case.

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

11 U.S.C. § 544(a)(1). The court in *Bash v. Check (In re Check)*, 129 B.R. 492 (Bankr.

N.D.Ohio 1991) held that, under Ohio law, an invalid lien is binding only between the parties and is not effective against a valid judgment lien and against the trustee in his capacity as a hypothetical judicial lien creditor. *See also, Hofacker,* 34 B.R. at 607.

Pursuant to § 544(a)(1) the Trustee, as of the filing of the petition, automatically acquired the avoiding rights of a judicial lien holder under Ohio law. Further, the phrase "without regard to the knowledge of the Trustee" would negate any personal knowledge as to the "agreement and payment" that the Trustee could possibly have prior to the commencement of the case. The mere recording of an improperly executed mortgage is not constructive notice as to subsequent mortgagees. *See Denison and Wright, supra.* Thusly, Chase's argument for subrogation is without merit.

## CONCLUSION

Accordingly, the subject mortgage is void and judgment is hereby rendered in favor of the Trustee. Each party is to bear its respective costs.

**IT IS SO ORDERED.**