**In re Jeanette WILLIAMS, Debtor.**

**Lauren A. Helbling, Chapter 7 Trustee, Plaintiff,**

**v.**

**Jeanette Williams, et al., Defendants.**

**Bankruptcy No. 98–17372.**
**Adversary No. 98–1416.**

United States Bankruptcy Court,
N.D. Ohio.

Nov. 3, 1999.

Stephen D. Hobt, Cleveland, OH, for plaintiff.

Amelia A. Bower, Cleveland, OH, for defendant.

## MEMORANDUM OF OPINION

DAVID F. SNOW, Bankruptcy Judge.

### Background

The chapter 7 Trustee filed this adversary proceeding pursuant to section 544(e) of the Bankruptcy Code to invalidate a mortgage (the "Mortgage") held by New Jersey Mortgage Company ("New Jersey Mortgage") securing a loan of approximately $49,000 on a rental property owned by the Debtor on Grandview Avenue in Cleveland. According to the Trustee, the Mortgage had been witnessed by only the notary public who acknowledged execution of the Mortgage by the Debtor and her husband (the "Williams") and not by the other person shown on the face of the mortgage as an attesting witness. If true, then the Mortgage was not executed in compliance with Ohio Rev.Code § 5301.01, which requires that a mortgage be signed in the presence of two attesting witnesses and acknowledged before a notary public or other judicial officer. If those formal requirements were not met, the mortgage would not be entitled to be recorded under Ohio Rev.Code § 5301.25(A) and would be avoidable by a *bona fide* purchaser of the Grandview property, the status conferred upon the Trustee by section 544(e) of the Bankruptcy Code. *See, e.g., Ford v. Osborne,* 45 Ohio St. 1, 12 N.E. 526 (1887); *Williamson v. Carskadden,* 36 Ohio St. 664 (1881); *Amick v. Woodworth,* 58 Ohio St. 86, 50 N.E. 437 (1898); *Citizens Nat'l Bank in Zanesville v. Denison,* 165 Ohio St. 89, 133 N.E.2d 329 (1956); *c.f. Basil v. Vincello,* 50 Ohio St.3d 185, 553 N.E.2d 602 (1990).

In the last few years chapter 7 trustees in this district have elicited testimony from several debtors at their 341 creditors' meeting that only one of the two named attesting witnesses was actually present when the mortgage on their property was signed. This has resulted in the threat that a substantial number of mortgages, whose validity and enforceability are otherwise unquestioned, could be avoided by trustees in bankruptcy. In response to that threat, the Ohio legislature enacted Ohio Rev.Code § 5301.234 which, in general, would preclude impeachment of the attestation and acknowledgment of a facially valid mortgage except in cases of actual fraud and would make the recording of a facially valid mortgage constructive notice to all persons, including specifically *bona fide* purchasers, thus cutting off the trustee's attack under section 544(e) of the Bankruptcy Code. However, Ohio Rev. Code § 5301.234 became effective June 30, 1999, several years after the Mortgage in question in this case was executed and more than a year after the Debtor filed her chapter 7 case.

New Jersey Mortgage argued that Ohio Rev.Code § 5301.234 should be applied retroactively to protect its Mortgage. However, every opinion in which this section has been considered has denied it

retroactive application, *Simon v. Chase Manhattan Bank (In re Zaptocky)*, 232 B.R. 76 (6th Cir. BAP 1999); *Blackmer v. TMS Mortgage, Inc. (In re Blackmer)*, Case No. 98–62773, Adv. Pro. No. 98–6259 (Bankr.N.D.Ohio, June 21, 1999, Williams, J.); *Green Tree Financial Servicing Corp. v. Spaur (In re Spaur)*, Case No 98–40715, Adv. Pro. No. 98–4066 (Bankr.N.D.Ohio, May 20,1999, Bodoh, J.); *Helbling v. Ducksworth (In re Ducksworth)*, Case No. 98–19425, 1999 WL 970273, Adv. Pro. No. 99–1040 (Bankr.N.D.Ohio, September 10, 1999, Morgenstern–Clarren, J.), and the Ohio Attorney General has advised the Court that in her opinion the section should not be applied retroactively. At an earlier pretrial on this matter the Court advised the parties that its review of Ohio law had led it to the same conclusion and that Ohio Rev.Code § 5301.234 was not applicable in this proceeding. New Jersey Mortgage did not argue this issue at trial and Ohio Rev.Code § 5301.234 is not discussed further in this opinion. With that exception, this opinion embodies in full the Court's findings of fact and conclusions of law in this adversary proceeding in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

### Facts

Most of the proceeds of New Jersey Mortgage's loan were used to pay off the existing mortgage of Ameriquest Mortgage Co. ("Ameriquest") on the Grandview property. It appears that the Debtor had no personal contact with New Jersey Mortgage. The loan was procured by Anthony Mortgage Services ("Anthony"), a mortgage broker, and was closed by Carl Danckaert, an employee of First Service Title Agency, Inc. ("First Service Title"). Danckaert brought the Mortgage and other papers required to close the loan to the Williams' home on February 17, 1998, for execution, and the Williams executed them in a meeting lasting 30 to 45 minutes. The only disputed issue is whether the second person, Neil Moir, whose signature appears as an attesting witness to the Williams' signature, accompanied Danckaert to the Williams' home. According to Danckaert, Moir was his ex-roommate and a student at Kent State University, he lived in Kent, Ohio, and had accompanied Danckaert on several other loan closings. Moir was not called by either party.

The Debtor was the Trustee's sole witness. Although her memory was weak and inexact on details of the loan and the loan closing, she testified positively that only one person other than her husband was present at her home when the Mortgage and other papers were executed. Danckaert testified that although he had no specific recollection of the Williams' closing it was his uniform practice as a loan closer to require the presence of a second witness when a mortgage was executed and that, since Moir's name appeared on the Mortgage as an attesting witness. Moir must in fact have accompanied Danckaert to the Williams' home. Harold Toft, Danckaert's boss and the president of First Service Title, confirmed that it was First Service Title's policy to require a second witness to the execution of any mortgage. The Court must decide whether to credit the Debtor's direct testimony that only one° person, admittedly Danckaert, witnessed the Williams' execution of the Mortgage or the testimony of Danckaert, buttressed by the testimony of Toft, that Moir must have been present since Danckaert never closed mortgage loans without two witnesses present to witness the borrowers' signatures.

New Jersey Mortgage did not suggest that the Debtor was lying or that she had any reason to do so. Any proceeds realized from invalidating the Mortgage would go to the Trustee and the creditors, not to the Debtor. New Jersey Mortgage's extensive cross-examination of the Debtor was designed to show that her memory of the relevant events was unreliable and varied to some extent from her earlier deposition. In fact, at the outset of her testimony it appeared that the Debtor had no

recollection of the location of the loan closing and based her belief that it occurred in her home on the fact that she did not recall going to the New Jersey Mortgage office. Her recollection of the details of the loan and her reasons for refinancing the Ameriquest loan were vague at best. Although she testified that the refinancing was intended to provide her a better interest rate, smaller loan payments and moneys to improve the Grandview property, in fact New Jersey Mortgage's loan bore a higher interest rate, carried higher monthly payments and provided the Debtor total cash proceeds of only $7.22. All in all, the evidence showed that the Debtor incurred $4,132.36 in settlement costs, including a mortgage broker's fee to Anthony of $2,311.36 and aggregate fees to First Service Title of $880, to obtain a loan from New Jersey Mortgage on substantially worse terms than the Ameriquest loan that it replaced. The picture that emerged from the Debtor's cross-examination was that of an unsophisticated consumer who signed what was put before her without paying much, if any, attention to what it contained. On the other hand, Danckaert's testimony that he uniformly required a second witness to be present was not shaken by the Trustee's cross-examination.

Nevertheless, it appears more likely than not that the Debtor's recollection that only one witness was present was correct. The Debtor's candid admission that she could not recall or grasp the details of the loan or the loan closing contrasted with, and on the whole made more credible, her positive assurance that only one witness was present. Danckaert admittedly had no firsthand recollection of the closing.

He obviously had a powerful motive to protect his job and employer by insisting upon his adherence to a uniform policy of requiring that two witnesses be present at loan closings. However, the Trustee concedes that she must prove her case by clear and convincing evidence and that the Court must find against her if her proof does not reach that level, even though she would prevail if the question were to be decided by a preponderance of the evidence.

## Analysis

Evidentiary questions in this Court are generally governed by federal law and the Rules of Evidence for United States Courts and Magistrates. Fed. R.Evid. 101; Fed.R.Bankr.P. 9017. The parties have, however, briefed and argued this case on the assumption that Ohio law, not federal law, determines whether the Trustee's evidence is sufficiently clear and convincing to invalidate the Mortgage. The parties' assumption appears well founded in view of the outcome determinative effect of the evidentiary rule applied.[1] Their assumption is also supported by Fed.R.Evid. 302 which states that "[i]n civil actions and proceedings, the effect of a presumption respecting a fact which is an element of a claim or defense as to which State law supplies the rule of decision is determined in accordance with State law." The Ohio cases indicate that the plaintiff bears a heavy burden in impeaching the execution of mortgages which on their face appear to have been executed in accordance with Ohio Rev.Code § 5301.01. *See, Ford,* 45 Ohio St. at 4, 12 N.E. 526; *Paramount Finance Co. v. Berk,* 179 N.E.2d 788, 788 (Ohio App.1962).

1. The Advisory Committee's Note on Fed. R.Evid. 302 states that a series of Supreme Court decisions in diversity cases leaves no doubt of the relevance of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) to questions of burden of proof. The cases cited by the Advisory Committee are *Cities Service Oil Co. v. Dunlap,* 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196 (1939), *Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943) and *Dick v. New York Life Ins. Co.,* 359 U.S. 437, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959). Fed.R.Evid. 302, Advisory Committee's Note. "The situations in which the state law is applied have been tagged for convenience ... as 'diversity cases.' The designation is not a completely accurate one since *Erie* applies to any claim or issue having its source in state law, regardless of the basis of federal jurisdiction...." *Id.*

It is not possible, however, to derive from the Ohio cases objective criteria from which to determine when, after surmounting the preponderance hurdle, evidence becomes clear and convincing. In a fraud case the Ohio Supreme Court said:

> Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.

*Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E.2d 118, 123 (1954). In an earlier fraud case the same court held it improper, however, to require that evidence "leaves no room for doubt" to qualify as clear and convincing. *McClintock v. Sweitzer,* 138 Ohio St. 324, 328, 34 N.E.2d 781, 783 (1941). Unfortunately, the Ohio cases provide this Court no compass to locate the point between "preponderance" and "beyond reasonable doubt" at which the evidence becomes clear and convincing except the firmness of the Court's belief or conviction, a mental state which might owe as much to the judge's digestion as to the quality of the proof. New Jersey Mortgage would circumvent the subjectivity of the "firm belief or conviction" test by generalizing the statement in *Paramount Finance* that the borrowers' testimony that the wife's signature had not been witnessed or acknowledged was "insufficient in law to overcome the certificate of acknowledgment by the notary." 179 N.E.2d at 788. The present case raises no question as to the validity of Danckaert's certificate of acknowledgment, and the Ohio Supreme Court has imposed no such rule. *See Williamson,* 36 Ohio St. 664; *Citizens Nat'l Bank,* 165 Ohio St. 89, 133 N.E.2d 329.

Nevertheless, the Court is left with the strong impression from the Ohio cases that the point where evidence on this issue becomes clear and convincing is much closer to the point where it dispels reasonable doubt than to where it satisfies the preponderance test. As noted in several cases, a notary public takes acknowledgments under statutory authority which may subject him or her to criminal sanctions if the acknowledgment is false. *Citizens Nat'l Bank,* 165 Ohio St. at 95, 133 N.E.2d 329; *Ford,* 45 Ohio St. at 10, 12 N.E. 526 (Owen C.J., dissenting). Although there are no similar statutory prescriptions governing attesting witnesses, the Ohio courts appear to have conflated the witnessing and acknowledgment requirements. *See e.g., Citizens Nat'l Bank,* 165 Ohio St. 89, 133 N.E.2d 329; *Ford,* 45 Ohio St. 1, 12 N.E. 526; *Amick,* 58 Ohio St. 86, 50 N.E. 437. Proving the presence of an attesting witness who is not also a notary would be even more taxing than proving that the notary was actually present at the signing.

In most mortgage loan closings the second witness has no knowledge of the parties, the documents or their content, and the fact of witnessing, especially in an office setting, would pass quickly from memory. The only evidence that the mortgagee will usually be able to adduce that the second witness was present will likely be the integrity of the notary's practice of requiring that the second witness be present at the signing of the mortgage.

It seems fair to conclude that the Ohio courts have implicitly, and sometimes explicitly, *Ford,* 45 Ohio St. at 4, 12 N.E. 526; *Coshocton Nat'l Bank v. Hagans,* 40 Ohio App. 190, 191, 178 N.E. 330, 330 (1931), accorded the mortgagee a strong presumption that a recorded mortgage was in fact acknowledged by the mortgagors and signed in the presence of the persons whose names appear as attesting witnesses. Although this presumption is not irrebuttable, as now provided in Ohio Rev. Code § 5301.234, it clearly has a substantive weight absent in the case of ordinary evidentiary presumptions which, under the federal rules and Ohio law, "burst" and are discarded, once evidence is presented. Fed.R.Evid. 301; Ohio R.Evid. 301; *Ayers v. Woodard,* 166 Ohio St. 138, 144, 140 N.E.2d 401, 404 (1957). That the presumption of the validity of an instrument has such substantive weight under Ohio law is evidenced by the strong language of

the Ohio Supreme Court cases cited *supra.* *See also Potter v. Potter,* 27 Ohio St. 84, 85 (1875)("the presumption is so strongly in favor of the instrument that ... nothing short of a clear and convincing state of fact ... will warrant the court to interfere....") It is further underscored by the Ohio legislature's passage of § 5301.234.

In this case the Trustee's proof does not rise to the required level to invalidate the Mortgage. The Debtor's recollection of the transaction was vague; her recollection of the documents, including the Mortgage, was virtually nonexistent. Although the Court would not so find on a preponderance test, it is possible that her recollection that only Danckaert came to the Williams' home for the loan closing was mistaken. On the other side, Danckaert emerged largely unscathed from cross-examination and if Moir came to Cleveland to sign the Mortgage, it is at least plausible that he attended the closing before going out to socialize with Danckaert, as the latter suggested. The Court is left to speculate on what testimony might have been given by the Debtor's husband, the other person admittedly present at the loan closing. Under these circumstances, involving only the conflicting testimony of the Debtor and Danckaert, the Court concludes that the Trustee has not met her burden of proving by clear and convincing evidence that Moir did not witness the Williams' signatures on the Mortgage.

The Court's order in conformity with this opinion is attached.

### ORDER

In accordance with the Memorandum Of Opinion issued on the date hereof, it is ORDERED that the Motion of the Plaintiff/Trustee to Set Aside the Mortgage held by New Jersey Mortgage Company in the above-captioned case should be, and hereby is, DENIED.

**IT IS SO ORDERED.**