**In re Gerald/Leslee WINLAND, Debtors.**

**Louis Yoppolo, Trustee, Plaintiff,**

**v.**

**Household Realty Corp., et al., Defendants.**

**No. 00–3054.**

United States Bankruptcy Court, N.D. Ohio.

April 9, 2001.

---

**36.** Finding of Fact # 22.

**37.** *Id.*

**38.** *Id.*

David A. Freeburg, Cleveland, OH, for Household Realty.

Marcia S. Gurekey, Toledo, OH, for Fifth Third Bank.

Gordon R. Barry, Toledo, OH, for debtors.

Louis J. Yoppolo, Toledo, OH, trustee.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after a Trial on the Plaintiff/Trustee's Complaint to Avoid an Unperfected Interest in Real Property. The underlying property inter-

est at issue in this case involves a mortgage granted by the Debtors to the Defendant as security for a loan. At the Trial held on this matter, both the Trustee and the Defendant were afforded the opportunity to present evidence and make any arguments that they wished the Court to consider in reaching its decision. This Court has now had the opportunity to review the arguments of Counsel, the exhibits, as well as the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the Trustee may not avoid the Defendant's mortgage interest in the Debtors' real property, and thus the Trustee's Complaint will be Dismissed.

### FACTS

On December 15, 1999, the Debtors, Gerald Winland and Leslee Winland, who are husband and wife, filed a joint petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. At the time of the Debtors' bankruptcy petition, the Debtors were the owners of a home in Toledo, Ohio. This property is at the center of the dispute between the Parties.

In the years immediately leading up to the filing of the instant bankruptcy case, the Debtors', apparently because of financial difficulties, refinanced their property on a number of occasions. Although not altogether exclusive with whom they conducted business, the Debtors, when refinancing their home, have apparently relied primarily on the Defendant, Household Realty Corporation (hereinafter referred to as the "Defendant"). In this respect, it was related to the Court that the Debtors, in obtaining financing from the Defendant, have at one time or another granted on their home at least five (5) separate mortgages to the Defendant, the most recent occurring in November of 1998. At the time the Debtors' bankruptcy case was commenced, the Debtors disclosed, in their bankruptcy petition, that their residence was encumbered by three (3) separate mortgages: a first mortgage held by the Defendant having a present balance of Eighty-seven Thousand Seven Hundred Sixty-one and 81/100 dollars ($87,761.81); a second mortgage held by Fifth Third Bank having a balance of Twenty-one Thousand Three Hundred Sixty-four and 83/100 dollars ($21,364.83); and a third mortgage held by the Defendant having a current balance Twenty-two Thousand Six Hundred Five and 50/100 dollars ($22,-605.50).

On March 10, 2000, the Trustee filed the instant complaint to avoid the first mortgage held by the Defendant on the basis that the mortgage was not executed in accordance with Ohio law. In support of this assertion, the Trustee introduced into evidence a mortgage signed by the Debtors, in which the same party—a one Dean A. Crothers—signed twice as a witness and once as a notary public.[1] The facts presented in this case also show that this mortgage was executed contemporaneously with a promissory note, a notice of a right to cancel, and a settlement statement.

In opposition to the Trustee's complaint to avoid its mortgage, the Defendant, while not disagreeing that its mortgage dated April 23, 1997 was improperly executed, argues that this specific mortgage is not the operative mortgage securing its loan to the Debtors. Instead, the Defendant argues that the actual mortgage securing its loan was executed on April 24, 1997, and

---

1. It will be noted for the record that with regards to Mr. Crothers signing as a notary public, no notary seal was affixed to the mortgage.

thereafter recorded on April 29, 1997.[2] In making this assertion, the Defendant professed that shortly after the Debtors signed the mortgage dated April 23, 1997, the error in its execution was discovered, which, according to the Defendant, necessitated and thereafter resulted in the Debtors returning to the Defendant's place of business on April 24, 1997 to execute a new mortgage which complied with all the terms of Ohio law. As proof of this transaction, the Defendant introduced into evidence a certified copy of a facially valid mortgage (i.e., a mortgage which contained the signatures of the Debtors, two witnesses, and a notary public) dated April 24, 1997. In response, however, to the Defendant's assertion that a new mortgage was executed, the Trustee, while not actually disputing the actual existence of a recorded mortgage dated April 24, 1997, has contested the veracity of this mortgage on what are essentially two separate legal grounds: one procedural and one substantive.

The Trustee's substantive objection to the Defendant's mortgage holds the mortgage dated April 24, 1997 did not comply with those mandatory conditions set forth by Ohio law because the mortgage was not, in fact, executed by the Debtors. Simply put, the Trustee asserts that the Debtors, after executing a mortgage on April 23, 1997, did not return the very next day to the Defendant's place of business and execute again, for the benefit of the Defendant, a new and subsequent mortgage. By comparison, the Trustee's procedural objection, although related, holds that the Defendant's mortgage is not admissible under the Federal Rules of Evidence because the original mortgage was not produced. Stated in more precise legal terms, the Trustee contends that since the validity of the Defendant's mortgage is at issue, the Best Evidence Rule requires the Defendant to produce an original mortgage. In reply to this argument, however, the Defendant has asked this Court to accept a certified copy of the original mortgage.

At the Trial held on the substantive issue raised by the Trustee, the Debtors testified that when they executed the mortgage dated April 23, 1997 only one witness was present, and that this witness did not notarize the mortgage. More importantly, however, with regards to the substantive issue at hand, both of the Debtors testified that, after executing the mortgage dated April 23, 1997 they never returned to the Defendant's place of business on April 24, 1997 to sign an additional mortgage. When asked why their proposed signatures appeared on the mortgage dated April 24, 1997, the Debtors both responded by questioning the authenticity of the document. In this respect, the Debtor, Mr. Winland, and to some extent, the Debtor, Mrs. Winland, were both unwilling to state that the signatures contained on the April 24, 1997 mortgage were in fact their signatures. On this latter assertion, however, the Defendant put forth evidence which tended to show that the Debtors' signatures on the April 24, 1997 mortgage were authentic. Specifically, the Defendant elicited the testimony of a handwriting expert who, after examining authenticated samples of the Debtors' signatures, came to the conclusion that those signatures contained on the mortgage dated April 24, 1997 were in fact made by the Debtors. In this regard, the

---

**2.** With respect to this assertion, however, the Court found it somewhat disconcerting that the Defendant, although arguing that its mortgage dated April 24, 1997 was the operative mortgage, *submitted in support of its proof of claim,* the original mortgage dated April 23, 1997.

Court, after closely examining the pertinent documents, must agree that the signatures contained on the mortgage dated April 24, 1997, although photocopied from an original, are authentic.

To buttress his position that the Debtors never returned to the Defendant's place of business to execute a new mortgage on April 24, 1997, the Trustee elicited testimony from the Debtors which showed that they were both able to recall, with some detail, the events surrounding the execution of the original mortgage date April 23, 1997. For example, the Debtors could recall that the closing of the mortgage dated April 23, 1997 took place in the evening, and that at the time of the closing, a petite blond woman was working at the Defendant's place of business. Similarly, the Debtor, Mr. Winland, could recall very clearly the events leading up to the Debtors' April 1997 refinancing. In addition, both of the Debtors testified to the fact that the mortgage closing took place at the Defendant's place of business in "Northtown Square" in Toledo, Ohio. Both of the Debtors also remained adamant, throughout their testimony, that they only attended one (1) mortgage closing with the Defendant in 1997, and that this event occurred on the 23rd of April.

To discredit the Debtors' account of events, the Defendant attempted to show that there were considerable weaknesses and inconsistencies in the Debtors' testimony. Specifically, the Defendant sought to show that the Debtors were confusing the events surrounding the mortgage closings on the 23rd/24th of April with those other occasions in which the Debtors had refinanced their home. In support thereof, it was established that, in direct contradiction to the Debtors' own testimony, the Defendant did not maintain a place of business in "Northtown Square" at the time the Debtors executed their mortgage in April of 1997, the Defendant having instead relocated its business sometime around the year 1996 to "Monroe Street" in Toledo, Ohio. Along this same line, the Defendant established that the petite blond women, whom the Debtors described as attending their 1997 closing, never actually worked at the Defendant's "Monroe Street" location, thus making her attendance at the 1997 mortgage closing impossible. Additional weaknesses in the Debtors' testimony also included: neither of the Debtors could recall exactly what the inside of the premises at which they conducted their 1997 mortgage closing looked like; and the Debtor, Gerald Winland, although claiming to remember very well the details of the April 1997 mortgage closing, could not recall with any sort of particularity the events of the mortgage closing the Debtors conducted with the Defendant in late 1998.

In additional support of its position that the Debtors did, in fact, execute an additional mortgage on April 24, 1997, the Defendant elicited the testimony from one of its current employees, Lorain Vanderhoff, who testified that she was present at both the 1997 and 1998 mortgage transactions conducted between the Debtors and the Defendant. In this regard, Mrs. Vanderhoff related to the Court that she acted as a witness at the Debtors' mortgage closing on April 24, 1997, and in the capacity of a notary public at the Debtors' 1998 mortgage closing. As a witness to the 1997 transaction, Ms. Vanderhoff testified that, even though she could not specifically recall the 1998 transaction between the Defendant and the Debtor, she specifically remembered that on April 24, 1997 the Debtors came to the Defendant's place of business on "Monroe Street" and executed a mortgage to the Defendant in front of her as a witness, and Dean A. Crothers, who acted as both a witness and a notary public. When asked to explain why she

specifically remembered the 1997 transaction, and not the 1998 transaction, Ms. Vanderhoff responded by explaining that the person in charge of expediting the 1997 paperwork was prone to errors, and thus the transaction stuck out in her mind.

In addition to testifying as to the actual execution of the Debtors' mortgage, Ms. Vanderhoff, and another employee of the Defendant, Dan Hall, also testified to the following information concerning the Debtors' mortgage, and the general handling of mortgages at Household Realty Corporation. First, it was related to the Court that it is standard operating procedure for the Defendant to require any of its employees who conduct mortgage closings, to have present at the closing two witnesses and a notary public. Second, testimony was given to the effect that when mortgage documents are prepared for signing, four (4) copies of such documents are made, two of which the mortgagor signs as an original and a copy; these documents, except for the mortgagee's signature, are also completely filled out at the time they are to be executed, and cannot be backdated (although it appears that in 1997 a different date could have been added). Third, with regards to the Debtors' mortgage dated April 24, 1997, no promissory note or other closing documents for the Debtors exist dated April 24, 1997, despite the fact that the mortgage dated April 24, 1997 specifically refers to a loan agreement dated April 24, 1997. Finally, it was brought to the Court's attention that the Defendant, since 1998, has had a policy in place which provides that mistakenly executed documents are to be destroyed.

## LAW

**Section 544. Trustee as lien creditor and as successor to certain creditors and purchasers**

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

## DISCUSSION

Determinations concerning the validity, extent, or priority of liens are core proceedings pursuant 28 U.S.C. § 157(b)(2)(K). Thus, this case is a core proceeding.

In order to effectuate the policies underlying the Bankruptcy Code, a bankruptcy trustee is conferred with certain powers, commonly referred to as strong-arm powers, which enable the trustee to avoid certain transactions involving the debtor. *Simon v. Chase Manhattan Bank (In re Zaptocky)*, 232 B.R. 76, 79 (6th Cir. BAP 1999). In this case, the Trustee, in accordance with his strong-arm powers, has asked the Court to avoid, for the benefit of the Debtors' bankruptcy estate, a security interest the Defendant allegedly maintains against the Debtors' former residence. The statutory authority upon which the Trustee relies for his cause of action is 11 U.S.C. § 544(a)(3), which, by conferring upon the trustee the status of a bona fide purchaser of property under applicable state law, permits the trustee to avoid any security interest against which, as of the commencement of the case, a bona fide

purchaser would have taken a superior interest. Before, however, addressing the substantive merits of the Trustee's cause of action under this section, an initial procedural issue needs to be first ascertained: whether, over the Trustee's objection, the Defendant's mortgage dated April 24, 1997 may be introduced into evidence. In this regard, the Court observes that if the Defendant's mortgage is found to be inadmissible, the Trustee's cause of action under § 544(a)(3) becomes moot, as there is, legally speaking, no security interest in existence for the Trustee to avoid.

The Trustee, along with counsel for the Debtors, has objected to the admissibility of the Defendant's mortgage dated April 24, 1997 on the grounds that an original of this mortgage was not produced for Trial. In this respect, legal counsel for the Defendant related to the Court that both originals of the mortgage dated April 24, 1997 had, through his office's inadvertence, been lost. Accordingly, the Defendant has asked that this Court accept into evidence, a copy of the mortgage certified from the county recorder's office.

The Federal Rules of Evidence govern evidentiary matters in bankruptcy cases. FED.R.EVID. 101; FED.R.BANKR.P. 9017. Under the Federal Rules of Evidence, a party seeking to prove the content of a writing, such as a mortgage, must normally produce the original writing. In particular, Federal Rule of Evidence 1002 provides that, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." This Rule, however, is qualified by other rules of evidence which permit a duplicate or other secondary evidence to be introduced to prove the content of a writing. *See, e.g.,* FED.R.EVID. 1003 (exception for duplicates); 1005 (exception for public rec-

ords); 1006 (exception for summaries); 1007 (exception for party admissions). In this respect, the Defendant has asserted that its copy of the mortgage executed by the Debtors is admissible, on the basis that it was a certified by the county recorder's office.

 Federal Rule of Evidence 1005 permits, in lieu of the original, a certified copy of a mortgage to be introduced into evidence. The specific language of Federal Rule of Evidence 1005, which provides for this is, in relevant part, as follows: "The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed ... may be proved by copy, certified as correct in accordance with rule 902. . . ." However, a close examination of this language shows that the scope of Federal Rule of Evidence 1005 is limited to the situation where a party is seeking to establish the contents of the record on file in the public office. As a result, Federal Rule of Evidence 1005 does not operate to legitimize documents simply on the basis that the document is stored in a public office. Stated in another way, Federal Rule of Evidence 1005 has no bearing on the original document from which the record is made. Consequently, a party seeking to prove the content of an original writing cannot rely on the fact that the writing was subsequently recorded when, as is the situation in this case, the original writing was returned to the party seeking to introduce the copy into evidence. *Amoco Production Co. v. United States,* 619 F.2d 1383, 1390 (10th Cir. 1980). Accordingly, in the instant case, as the Trustee has not disputed the contents of the mortgage on file with the county recorder's office, the Defendant may not rely on this Rule to excuse the production of the original mortgages dated April 24, 1997. Notwithstanding, a review of the Federal Rules of Evidence shows that an-

other provision may, if its requirements are met, permit the introduction into evidence of the Defendant's certified copy of its mortgage.

Under Federal Rule of Evidence 1004, the production of an original document may be excused if two requirements are met: (1) the original writing was lost or destroyed; and (2) the proponent of the secondary evidence has not acted in bad faith. *Sicherman v. Diamoncut, Inc. (In re Sol Bergman Estate Jewelers, Inc.)*, 208 F.3d 215, 2000 WL 263338 at *4 (6th Cir.(Ohio)). With respect to these requirements, legal counsel for the Defendant related to the Court that the originals of the mortgage dated April 24, 1997 were in fact lost, and that the loss of these documents was not accomplished in bad faith; that is, the loss was inadvertent. After considering these representations, the Court, although finding the loss of the two originals of the mortgage documents somewhat coincidental, has been given no reason to doubt the Defendant's professional representations.[3] In addition, with respect to the two requirements set forth in Federal Rule of Evidence 1004, neither the Trustee, nor Debtors' legal counsel, have put forth any evidence which would tend to establish that the original mortgage documents held by the Defendant were not lost, or that the mortgages were lost as the result of the Defendant's bad faith. Consequently, since the party challenging the

admissibility of any secondary evidence under Federal Rule of Evidence 1004 has the burden of establishing that such evidence is not admissible, *In re Sol Bergman Estate Jewelers, Inc.*, 225 B.R. at 902–03, the Court hereby overrules the Trustee's objection relating to the admissibility of the certified copy of the Defendant's mortgage dated April 24, 1997. Accordingly, the Court now turns to address the Trustee's substantive compliance with § 544(a)(3).

As set forth above, § 544(a)(3) permits a bankruptcy trustee to avoid any transfer of real property that would not be enforceable against a bona fide purchaser of the property at the time the bankruptcy petition is filed. *Williams v. Marlar (In re Marlar)*, 252 B.R. 743, 752 (8th Cir. BAP 2000). The effect of this section, is that any creditor who has their security interest avoided is treated as a general unsecured creditor. *Drewes v. Security State Bank of Wishek (In re Nies)*, 183 B.R. 866, 868 (Bankr.D.N.D.1995). For purposes of § 544(a)(3), a trustee's avoiding powers are subject to the law of the situs of the property; in this case Ohio law, since all the events giving rise to underlying transaction transpired in Ohio. *Id.*

Under Ohio law, only those mortgages properly executed and then recorded take priority against a bona fide purchaser of the same property.[4] In order for

---

**3.** In this regard, the Court observes that a lawyer who lies or is otherwise dishonest to a court is in violation of Ohio's Disciplinary Rules 1–102(A)(4)/(5), and thereby subject to disciplinary action, up to and including permanent disbarment from the practice of law. *See, e.g., Disciplinary Counsel v. Greene*, 74 Ohio St.3d 13, 16, 655 N.E.2d 1299, 1301 (Ohio 1995); *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 190–191, 658 N.E.2d 237, 240 (Ohio 1995).

**4.** The legal basis for this, as it pertains to Ohio law, is briefly as follows: First Ohio law provides that a mortgage "shall be recorded in the office of the county recorder of the county in which the mortgaged premises are situated and shall take effect at the time they are delivered to the recorder for record." O.R.C. § 5301.23(A). In turn, O.R.C. § 5301.25(A) provides that until a mortgage is recorded, it is "fraudulent, so far as [it] relates to a subsequent bona fide purchaser having, at the time of purchase, no knowledge

a mortgage to be considered properly executed, Ohio law provides that it must be signed by the mortgagor(s) in the presence of two (2) witnesses and then acknowledged by an official, such as a notary public. Specifically, O.R.C. § 5301.01, which governs the formal requirements for the execution of mortgages and other transfers of interests in land, provides, in relevant part, that:

> A ... mortgage ... shall be signed by the ... mortgagor.... The signing shall be acknowledged by the ... mortgagor ... in the presence of two witnesses, who shall attest the signing and subscribe their names to the attestation. The signing shall be acknowledged by the ... mortgagor ... before a ... notary public ... who shall certify the acknowledgment and subscribe his name to the certificate of the acknowledgment.

With respect to these requirements, quite a few cases, in the context of an action brought under § 544(a)(3), have addressed the issue of improperly executed mortgages. Foremost among these cases is *Simon v. Chase Manhattan Bank (In re Zaptocky)*, 232 B.R. 76, 78 (6th Cir. BAP 1999), in which the Bankruptcy Appellate Panel for the Sixth Circuit upheld a bankruptcy court's decision which had found that a creditor's mortgage was not properly witnessed. Other cases include: *Simon v. First Union Mortgage Corp. (In re Burnham)*, 231 B.R. 270 (Bankr.N.D.Ohio 1999), testimony of the debtor that only

one person witnessed the execution of a mortgage was insufficient to overcome the presumption of validity afforded to a facially valid mortgage; *Baumgart v. Ford Consumer Finance (In re Salamone)*, 231 B.R. 628 (Bankr.N.D.Ohio 1999), credible testimony given by debtors was not sufficient to avoid a mortgage where evidence to the contrary was also credible; *Helbling v. Williams, et al. (In re Williams)*, 240 B.R. 884, 885–86 (Bankr.N.D.Ohio 1999), a debtor's vague testimony concerning the improper witnessing of a mortgage was insufficient to refute the creditor's testimony to the contrary.

■ An assessment of these cases reveals that a bankruptcy trustee bears a heavy, although not insurmountable, burden to establish that a mortgage which appears valid on its face, was not executed in accordance with O.R.C. § 5301.01. In addition, in a case such as this, where the notary's acknowledgment as to the presence of the mortgagor(s) is challenged, an even greater burden is imposed upon the party contesting the execution of the mortgage. The reason for this is that Ohio case law has generally held that a notarial acknowledgment is conclusive evidence of the facts set forth therein. *In re Zaptocky*, 232 B.R. at 80. For example, the Ohio Supreme Court has stated: "[i]n the absence of clear and convincing evidence of fraud, coercion or the like, [a] notarized document which is valid on its face should

of the existence of [mortgage]." In addition, and of upmost importance for purposes of this case, both of these sections also provide that only those mortgages "properly executed" are entitled to be recorded. Thus, taken together these statutory sections codify the well-established rule in Ohio that a mortgage must be properly executed and then recorded in order for the mortgage to prevail against a bona fide purchaser; a result, which the Court observes, is not altered by the fact that an improperly executed mortgage is actually

accepted for recording. *Citizens Nat. Bank in Zanesville v. Denison*, 165 Ohio St. 89, 133 N.E.2d 329 (1956); *In re Zaptocky*, 232 B.R. at 81–82; *Helbling v. Ducksworth (In re Ducksworth)*, 1999 WL 970273 at *1 (Bankr. N.D.Ohio 1999). *Bash v. Lepelley (In re Lepelley)*, 233 B.R. 802, 806–07 (Bankr.N.D.Ohio 1999), *citing Citizens Nat'l Bank v. Denison*, 165 Ohio St. 89, 133 N.E.2d 329 (1956) and *Amick v. Woodworth*, 58 Ohio St. 86, 50 N.E. 437 (1898).

not be questioned as to its form." *State ex rel. Humble v. Brown*, 52 Ohio St.2d 9, 6 O.O.3d 77, 368 N.E.2d 294 (Ohio 1977); *see also Paramount Fin. Co. v. Berk*, 179 N.E.2d 788 (Ohio App.1962) (testimony of two mortgagors, standing alone, is insufficient in law to overcome the certificate of acknowledgment executed by the notary); *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526 (Ohio 1887) (clear and convincing evidence is needed to show that a deed containing the signature of the grantor and her husband was not acknowledged as the deed purports it to have been).

In support of his compliance with this burden, the Trustee, while acknowledging some weaknesses in the Debtors' testimony, argues that the Debtors could not have possibly been mistaken in their conviction that they did not attend a second mortgage closing with the Defendant in April of 1997. To put it simply, the Trustee argues that the Debtors would surely have recalled returning to the Defendant's place of business the very next day to correct the deficiencies in the Defendant's mortgage dated April 23, 1997. As a result, the Trustee maintains that since the Debtors clearly remember executing only one (1) mortgage in April of 1997, and since two (2) separate mortgages clearly exist-one properly executed and one improperly executed-the Defendant in this case was clearly attempting to conceal its improper execution of the latter mortgage executed by the Debtors.

■ Logically speaking, the Trustee's argument makes sense for a number of reasons. In the first place, it would seem likely that a person would remember returning to a place of business the very next day to sign an additional mortgage, especially where, as in this case, the first mortgage was wrongly executed. Similarly, a serious question is raised as to why an employee of the Defendant, in clear violation of company policy and common sense, would permit a mortgage to be executed with just one (1) person signing as two (2) witnesses and a notary public unless it was intended that such deficiencies were to be cured at a later time outside the presence of the Debtors. In this regard, certain other facts present in this case, when taken as a whole, also seem to corroborate the Trustee's assertion of fraudulent conduct. For example, the Defendant clearly admits that more than one original mortgage was executed by the Debtors on April 23, 1997, thus raising the possibility that on the 24th of April, the Defendant caused to be executed a mortgage which, although actually signed by the Debtors, was not actually acknowledged in the presence of two witnesses and a notary public. This supposition becomes even more plausible when one considers a couple of additional factors established in this case: First, the Debtors' mortgage dated April 23, 1997 was executed at night when it would have been entirely possible, even according to the testimony offered by the Defendant, that only one person would have been present at the Defendant's place of business. Second, the mortgage dated April 24, 1997 specifically refers to a nonexistent promissory note bearing the same date.

The above-stated inferences of fraud, however, must be set against certain other considerations; namely: (1) the signatures contained on the Defendant's mortgage dated April 24, 1997, although photocopied, are genuine; (2) Ms. Vanderhoff's testimony as to the presence of the Debtors at the April 24, 1997 mortgage closing; and (3) the Defendant's company policy to always have two witnesses and a notary public present at a mortgage closing. As to how such considerations should be weighed against the arguments put forth by the Trustee, the *In re Zaptocky* decision, hav-

ing sustained a challenge to the proper execution of a mortgage under O.R.C. § 5301.01, is illustrative.

In *Simpson v. Zaptocky (In re Zaptocky)*, the creditor had the debtors execute a mortgage against the debtors' home; this mortgage contained the signatures of the debtors, two witnesses and a notary public. 231 B.R. 260, 262 (Bankr. N.D.Ohio 1998). After the debtors filed for bankruptcy relief, the trustee appointed to the case brought an action to avoid the mortgage on the basis that the mortgage was not properly executed in accordance with Ohio law. *Id.* at 261. Specifically, the bankruptcy trustee alleged that one of the witnesses, whose signature appeared on the mortgage, was not actually present in the debtors' home during the execution of the mortgage. *Id.* at 262. At the trial held on the matter by the Bankruptcy Court, the trustee presented the testimony of the debtors who both stated that only one individual was in their home at the time the creditor's mortgage was executed. *Id.* The other individual present at the mortgage closing, who acted in the capacity of both a witness and a notary public, partially corroborated this testimony. *Id.* In opposition to this testimony, the creditor emphasized that its mortgage appeared valid on its face. In addition, the creditor introduced evidence showing that it was the policy of its company to require the presence of two witnesses and a notary public at every mortgage transaction. *Id.* The creditor also sought, with some success, to impeach the debtors' testimony by showing that the debtors could not remember the individual who was actually present at their mortgage closing.

After considering this evidence, the bankruptcy court found that the trustee had presented sufficient evidence to establish that the creditor's mortgage was not properly executed. *Id.* at 264. In making this determination, the Court held that a home refinancing closing is ordinarily an extraordinary event for a consumer, and thus such an event, especially when occurring in one's home, would likely stick out in a debtor's mind; a fact which, in the bankruptcy court's eyes, weighed heavily against the debtors not being able to remember every aspect of their mortgage closing. *Id.* Additionally, the bankruptcy court in *In re Zaptocky* was persuaded by the fact that no one could, through firsthand knowledge, refute the debtors' testimony that a second witness was not present at their mortgage closing. *Id.* On appeal, the Bankruptcy Appellate Panel affirmed this decision, holding that the bankruptcy court's account of events was "plausible in light of the record viewed in its entirety...." *In re Zaptocky*, 232 B.R. at 81. Thus, the Court in *In re Zaptocky*, although not ostensibly adopting a broad rule that a debtor's testimony is always sufficient to overcome the existence of a facially valid mortgage, did espouse the premise that a debtor's testimony, when coupled with other circumstances, could be sufficient to invalidate a mortgage which otherwise appears valid on its face.

Major differences, however, exist between the evidence presented in this case and the factual situation present in *In re Zaptocky*. To begin with, in *In re Zaptocky* the debtors' testimony regarding the improper execution of the underlying mortgage was partially corroborated by the notary/first witness. By comparison, in this case, the Defendant's employee, Ms. Vanderhoff, testified convincingly to the fact that on the 24th of April the Debtors personally appeared before her and another notary/witness and signed a mortgage. In addition, the Debtors in this case, unlike the debtors in *In re Zaptocky*, had refinanced their home on many prior occasions, thus reducing the uniqueness of the event. Also along this line, the mortgage

in *In re Zaptocky* was signed at the debtors' home, instead of at an office. However, the biggest difference between this case and the *In re Zaptocky* decision is the credibility which can be attached to the testimony given by the Parties.

In any action brought under § 544(a)(3) to avoid a mortgage on the basis that it was not properly executed in accordance with O.R.C. § 5301.01, the quintessential question is whose credibility does the trier of fact find more persuasive: the debtor's or the creditor's. *In re Zaptocky*, 232 B.R. at 81; *see also In re Burnham*, 231 B.R. at 275 (resolution of a mortgage avoidance issue necessarily hinges on the reliability of the debtor's testimony against the testimony offered by the creditor). In this case, of course, considerable doubt has been cast on the accuracy of the Debtors' testimony given that it was established that the Debtors could not accurately recall many of the events surrounding the execution of their mortgage dated April 23, 1997. In particular, the Debtors, in addition to not being able to identify all the parties present at their mortgage closing, could not recall the actual physical location of their mortgage closing. Additionally, the Debtors could not recall many details surrounding the event such as what the inside of the Defendant's place of business on Monroe Street looked like. In this regard, the Court, although not questioning the sincerity of the Debtors' testimony, is convinced that the Debtors were simply confusing, at least to some extent, the events surrounding their April 1997 mortgage closing with those other occasions in which they also refinanced their home. By comparison, Ms. Vanderhoff's testimony regarding the presence of the Debtors at the April 24th mortgage closing, although self-serving in nature, seems credible.

After giving these considerations careful assessment, the Court finds that the Trustee's account of events are too speculative to establish his burden under 11 U.S.C. § 544(a)(3) and O.R.C. § 5301.01. In this regard, it must be recalled that when a party, such as the Trustee, seeks to challenge the notarial acknowledgment contained in a mortgage, they must establish the existence of fraud, or some other form of scienter, by clear and convincing evidence. Clear and convincing evidence may be defined as that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. *In re Williams*, 240 B.R. at 888, *citing Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118, 123 (1954). For purposes of this case, the Court, although agreeing that many of the circumstances present in this case are indicative of a fraudulently executed mortgage, is not left with a firm conviction that the Defendant's mortgage dated April 24, 1997 was executed in a fraudulent manner—i.e., outside of the Debtors' presence. Of utmost importance in this decision, is the fact that, notwithstanding the inferences of fraud that may exist in this case, the Trustee's case fundamentally hinges on the credibility which may be attached to the Debtors' recollection of the events which transpired in April of 1997. Yet, as just set forth above, the Debtors' inability to recall both accurately and thoroughly the events surrounding their mortgage closing in April of 1997 greatly diminishes the credibility, and thus weight, which can be accorded to the Debtors' testimony regarding the events which transpired in April of 1997. Conversely, the evidence offered by the Defendant in its case-in-chief, and in particular the testimony of Ms. Vanderhoff, emerged from the Trustee's cross-examination largely unscathed. Accordingly, for these reasons, the Court will not disturb the

facially valid mortgage held by the Defendant, and thus the Court holds that the Trustee's Complaint to Avoid the Defendant's mortgage should be Dismissed.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Trustee's Complaint to Avoid an Unperfected Security Interest in Real Property against the Defendant, Household Realty Corporation, be, and is hereby, DISMISSED WITH PREJUDICE.