**In re Theodore A. LEGATES, Debtor.**

**Alfred Thomas Giuliano, Chapter 7 Trustee, Plaintiff,**

v.

**Theodore A. Legates and Dennis E. Crowley, Defendants.**

**Dennis E. Crowley, Third–Party Plaintiff,**

v.

**Wilmington Trust Company, a Delaware Corporation, Third–Party Defendant.**

**Bankruptcy No. 06–10324(PJW).
Adversary No. 07–51686(PJW).**

United States Bankruptcy Court, D. Delaware.

Jan. 29, 2008.

Henry Jaffe, Evelyn J. Meltzer, Pepper Hamilton LLP, Wilmington, DE, for Wilmington Trust Company.

William D. Sullivan, Elihu E. Allinson, III, William D. Sullivan, LLC, Wilmington, DE, for Dennis E. Crowley.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is regarding the third-party defendant Wilmington Trust Company's ("WTC"), motion (Doc. # 13) to dismiss Dennis E. Crowley's ("Crowley") Third–Party Complaint. For reasons discussed below the Court will deny the motion to dismiss.

### Background

The essential facts are not in dispute.

Crowley and the Chapter 7 debtor, Theodore A. Legates ("Legates"), were domestic partners from 1989 to 2004. (Doc. # 16, p. 3). In July 1999, Legates purchased a business known as the Stable Shoppes, Inc., located at 800 North State Street, Dover, Delaware 19901 ("Stable Shoppes"). The purchase price was $72,101.88. (Doc. # 13, p. 4). Stable Shoppes borrowed $95,000 from WTC and established a $50,000 line of credit with WTC (collectively the "Original Loan") to finance the purchase and future inventories. Legates executed a personal guarantee for each component of the Original Loan. Crowley, without representation of a counsel, also executed personal guarantees for the Original Loan ("Personal Guarantees"). (*See* Doc. # 16, pp. 3–4).

Crowley alleges that during the period between July 1, 1999, to the end of 2004, the Debtor had, on various occasions, negotiated with WTC to increase the duration and amount of the Original Loan. (Doc. # 16, p. 4). This was all done without Crowley's knowledge or consent. (Doc. # 16, p. 4). The exact terms of the renegotiated loan are not clear, but it appears that the duration and the amount subject to Personal Guarantees, and the credit limit, the interest rates, and the principal of the Original Loan may have been affected. (*See* Doc. # 16, 4). WTC might have also granted a new loan to Stable Shoppes. (*See* Doc. # 16, 4).

Allegedly, Crowley discovered the later loans and alterations in December 2004. An officer of WTC notified Crowley that funds were withdrawn from his joint account with Legates to cover payment defaults by Stable Shoppes. (Doc. # 16, pp. 4–5). On December 28, 2004, at Crowley's request, WTC provided certain loan documents to Crowley. (Doc. # 16, p. 5). Upon reviewing these documents, Crowley alleges that he noticed some discrepancies between the documents and the financial statements provided to him by the Stable Shoppes. (Doc. # 16, p. 5).

On May 12, 2005, WTC wrote a letter demanding that Crowley and Legates remit $207,800.92 for outstanding loans. (Doc. # 13, p. 4). Crowley telephoned an officer of WTC in June 2005. (Doc. # 16, p. 5). They discussed the outstanding balance on the loans and repayment options. (Doc. # 16, p. 5). Crowley told the officer that the Stable Shoppes had gone out of business, and that he and Legates were going to reach a personal property settlement in connection with the termination of their domestic pairing. (Doc. # 16, p. 5).

Crowley also asserts that it was during this telephone conversation that he first learned that his signatures appeared on several loan renegotiation documents.(*See* Doc. # 16, pp. 5–6). He claims they are forged. (Doc. # 16, pp. 5–6).

On June 24, 2005, Legates and Crowley executed an agreement ("Agreement") that transferred Legates's 50% interest in their joint home ("Property") to Crowley.[1] (Doc. # 13, p. 4). In return, Crowley would pay WTC $138,000 in partial satisfaction of the outstanding loan. (Doc. # 13, p. 4).

After executing the Agreement, Crowley claims that he spoke with the WTC officer on the telephone again. That officer supposedly told him that WTC's own investigation concluded that Crowley's signatures on the loan renegotiation documents were indeed forged. (Doc. # 16, p. 6). Then on July 5, 2005, that officer sent a letter to Crowley stating that WTC would allow Crowley to purchase his Personal Guaranties for $138,000. (Doc. # 16, p. 7). On July 6, 2005, Crowley remitted his check to WTC in the amount of $138,000. (Doc. # 13, p. 4).

Crowley asserts that the July 5, 2005 letter mischaracterized the status of his obligation to pay WTC for his Personal Guarantees. (Doc. # 16, p. 7). He believed that the payment was for full discharge of his Personal Guarantees because of the forgeries and in consideration of his agreement to testify on behalf of WTC about the forgeries and related fraud. (Doc. # 16, pp. 6–7). Thus, Crowley believed that his payment fully satisfied his Personal Guarantees and at least partially satisfied Legates' obligation to WTC extending from the Original Loan and renegotiated loans. (Doc. # 16, p. 7).

On April 6, 2006, Legates filed petition for relief under chapter 7 of title 11 of the United State Code, 11 U.S.C. §§ 101 *et seq.* (Doc. # 13, p. 1). Upon filing the petition a chapter 7 trustee ("Trustee") was appointed to liquidate the estate. (Doc. # 13, p. 1). On August 8, 2007, the Trustee commenced this adversary proceeding against Legates and Crowley, seeking a denial of discharge, turnover and the avoidance and recovery of assets (including the Property). (Doc. # 13, p. 1). In the alternative, the Complaint seeks judgment against Crowley in the amount of not less than $195,000. (Doc. # 22, Ex. 2, p. 9) On September 24, 2007, Crowley filed a Third–Party Complaint against WTC asserting counts of: (1) negligence, (2) breach of covenant of good faith and fair dealing, (3) accounting, (4) 11 U.S.C. § 550 (Crowley being a mere conduit of Legates' $138,000 payment to WTC), (5) unjust enrichment, (6) attorney's fee all arising out of the loan and Property transactions described above. (Doc. # 13, p. 1; ex. B).

## Discussion

WTC contends that the Third–Party Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), made applicable by Bankruptcy Rule Civil Procedure 7012(b)(1). (Doc. # 13, p. 5). WTC argues that this Court does not have jurisdiction over the Third–Party Complaint because it is neither a core proceeding nor a related proceeding. (Doc. # 13, p. 5). As an alternative to finding no subject matter jurisdiction, WTC requests that, pursuant to 28 U.S.C. § 1334(c)(1), I exercise discretion to not hear the Third–Party Complaint.

---

1. The Property is located at 103 Cedar Valley Lane, Rehoboth Beach, Delaware, 19971. The deed was dated and executed on June, 24, 2005, and it was recorded on July 11, 2005. (Doc. # 13, ex. A.C).

### Subject Matter Jurisdiction

The Third Circuit Court of Appeals has enunciated the standard for determining a Rule 12(b)(1) motion:

A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff. In reviewing a factual attack, the court may consider evidence outside the pleadings.

*Gould Elecs., Inc. v. United States,* 220 F.3d 169, 176 (3d Cir.2000) (internal citation omitted).

■ A bankruptcy court has subject matter jurisdiction over two types of proceedings: (1) core and (2) related to. A proceeding is core if " 'it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.' " *Torkelsen v. Maggio (In re Guild and Gallery Plus, Inc.),* 72 F.3d 1171, 1178 (3d Cir.1996) (quoting *In re Marcus Hook Dev. Park Inc.,* 943 F.2d 261, 267 (3d Cir.1991)). This is not the case here. The third-party claims asserted against WTC neither invoke title 11 nor could they occur only in the context of a bankruptcy case. Rather, the third-party claims are based on state laws.

■ A related to proceeding is one where *"the outcome of that proceeding could conceivably have any effect on the estate being administrated in bankruptcy." Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)(emphasis in original); *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261 (3d Cir.1991). The Third Circuit has held that "[the] key word in [this test] is conceivable. Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling and administration of the bankrupt estate." *Halper v. Halper,* 164 F.3d 830, 837 (3d Cir.1999) (quoting *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d at 269).

■ WTC asserts that the Third–Party Complaint is not a related to proceeding because it only seeks to assign and proportion liability between Crowley and WTC, thus it will not have any conceivable effect on Legates' estate. (*See* Doc. # 13, p. 7). WTC paints two possible scenarios in support. First, if Crowley defeats the Trustee's claims, then the Third–Party Complaint is moot and will have no effect on the estate. (Doc. # 18, p. 3). Alternatively, if the Trustee succeeds in his claims, establishing that Crowley received more than a "reasonably equivalent value" from Legates, Crowley will most likely be required to return the windfall amount, which is the value of the Property minus the $138,000 Crowley paid to WTC. (*See* Doc. # 18, pp. 3–4). According to WTC, under this scenario Crowley would not be able to recover against WTC because he did not suffer any loss. (Doc. # 18, p. 4).[2] According to WTC, "in this scenario Crowley would have not been damaged by the Trustee's avoidance and recovery. Rather, Crowley would simply be returning to the Estate the amount by which he was unjustly enriched—an amount to which he

---

**2.** WTC also discusses the possibility of the Trustee recovering more than the amount of the property Crowley received from the Debtor, and Crowley winning his third-party claims against WTC. (Doc. # 18, p. 6). WTC believes that, in such case, it will have a subordinated claim against the bankruptcy estate, which will not affect the aggregate claim against the Debtor. (Doc. # 18, pp. 6–7).

was never entitled. Since Crowley would not have been damaged, he would have no viable claim against WTC and consequently, such claim could have no effect upon the Estate." (Doc. # 18, p. 4)

Crowley responded by relying on this Court's decision in *Willcox & Gibbs, Inc. v. Cutting/Sewing Room Equip. Co., Inc. (In re Willcox & Gibbs, Inc.)*, 314 B.R. 541 (2004). He points out, amongst other things, that if the Trustee succeeds in his claim, Crowley may not have the ability to pay the Trustee in full. The Trustee is seeking to liquidate the Property and to avoid and recover one half of its market value as of July 10, 2007. (Doc. # 18, p. 12). If the Trustee succeeds, Crowley claims that he would be left homeless and might have to seek bankruptcy protection himself. (Doc. # 18, p. 12). As noted above, the Trustee's complaint seeks a money judgment as an alternative to recovery of the Property. In other words, Crowley may be judgment proof and any recovery he obtains against WTC could satisfy a judgment against Crowley in favor of the Trustee.

WTC contends that this argument is "ludicrous" because Crowley holds the very Property that the Trustee is seeking to avoid. (Doc. # 18, p. 2). WTC repeatedly makes this assertion:

*Crowley holds the very asset that the Trustee is seeking to avoid*, namely, the Property and, thus, there is no need to hail WTC into bankruptcy court over this otherwise unrelated dispute.

Doc. # 18, p. 2, lines 8–10 (emphasis in original).

Specifically, according to Crowley, because his net worth is allegedly less than the amount sought by the Trustee in the Complaint, the estate will not be able to satisfy in full any judgment it receives against him unless he is able to recover on his claims against WTC.

* * *

Such argument, however, is ludicrous because *Crowley holds the very asset that the Trustee is seeking to avoid— namely, the Property.*

Doc. # 18, p. 8, lines 13–18 (emphasis in original).

Unlike the *Willcox* case, however, where the defendant who received the preference payment no longer possessed such funds, *Crowley received and retained the Property that the Trustee is seeking to avoid.*

Doc. # 18, p. 8, line 24; p. 9, lines 1–2 (emphasis in original).

The problem with WTC's argument is that it is quite conceivable that the Property may be subject to encumbrances that the Trustee could not avoid and which could limit or preclude recovery by the Trustee. The transfer of the real property to Crowley was effected on July 11, 2005. The petition was not filed until April 6, 2006 and the complaint was not filed until August 1, 2007. A good faith encumbrance transaction between Crowley and a third-party in the two year period of August 2005 and August 1, 2007 could not be defeated by the Trustee. *See Drewes v. Sec. State Bank of Wishek (In re Nies)*, 183 B.R. 866 (Bankr.N.D.1995) (The debtors had entered into a few loans with a bank. On September 13, 1993, the debtors executed a mortgage in favor of the bank in consideration and as security for the loans. The debtors filed bankruptcy petition on September 30, 1994, and the avoidance action commenced on March 7, 1995. The court after finding that the mortgage was properly recorded held that the trustee cannot avoid the bank's secured interest.). Indeed, it is conceivable that Crowley financed his $138,000 payment to WTC by borrowing from a bona fide lender who

took a mortgage on the Property. If there are any such encumbrances they could diminish or possibly eliminate any value that the Trustee might recover out of the Property. The Trustee obviously might recover a judgment as to which Crowley would have personal liability but there is nothing in the pleadings to suggest that Crowley could satisfy any such personal liability. If Crowley has insufficient equity in the Property to satisfy the Trustee's claim or if he has insufficient other assets to satisfy the Trustee's claim—both being distinct possibilities—and if he recovers as against WTC then that recovery would inure to the benefit of the estate. Thus, I conclude that because the Third–Party Complaint could conceivably benefit the estate there is related to jurisdiction.

### The § 550 claim (Count IV)

With respect to Count IV of the Third–Party Complaint, namely, the § 550 claim, WTC requests, *inter alia,* that the count be dismissed for lack of standing. Crowley does not respond to that position. Instead, Crowley answered by requesting that the Court treat Count IV as a request for derivative standing to bring directly against WTC and in the name of the Debtor's estate, the same causes of action for avoidance, preservation, and recovery that the Trustee brought against him pursuant to Count IV of the Complaint. (Doc. # 16, pp. 16–17). I believe Crowley's request is procedurally defective. The matter before me is a motion to dismiss pursuant to Rule 12(b)(1). If Crowley wants to seek standing for a derivative complaint under § 550, he may make an appropriate application and the Trustee must be involved in any determination of that application. Consequently, I see no need to address Count IV at this time.

### Discretionary Abstention— 28 U.S.C. § 1334(c)(1)

As an alternative to finding no subject matter jurisdiction, WTC request that I exercise discretion to not hear the Third–Party Complaint pursuant to 28 U.S.C. § 1334(c)(1). Section 1334(c)(1) provides that nothing "prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

■ When making an abstention determination, the Court should consider: (i) the effect on the efficient administration of the estate, (ii) the extent to which state law issues predominate over bankruptcy issues, (iii) the difficulty or unsettled nature of the applicable state law, (iv) the presence of a related proceeding commenced in state or other non-bankruptcy court, (v) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (vi) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (vii) the substance rather than the form of an asserted "core" proceeding, (viii) the feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court and enforced in bankruptcy court, (ix) the burden on the court's docket, (x) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping, (xi) the existence of the right to a trial by jury, and (xii) the presence of non-debtors in the proceeding. *Total Technical Servs., Inc. v. Stackfleth (In re Total Technical Servs., Inc.),* 142 B.R. 96, 100–01 (Bankr. D.Del.1992) (citations omitted).

■ An examination of each of these factors reveals that the Court should not abstain from hearing the Third–Party Complaint.

(i) The effect on the Efficient Administration of the Estate: As this Court found

to be the case with Juki in *Willcox,* "[k]eeping both the preference action and the third-party proceeding in this Court will likely expedite and enhance full satisfaction of any judgment that the Trustee may obtain." *Willcox,* 314 B.R. at 546. This factor weighs heavily against abstention.

(ii) The Extent to Which State Law Issues Predominate Over Bankruptcy Issues: While the state law negligence and related counts asserted against WTC are governed by Delaware law, this Court is seated in Delaware and has applied and construed Delaware law on numerous prior occasions. It cannot reasonably be argued that the Court would be burdened by having to apply Delaware law, with which it is familiar. This factor tips against abstention.

(iii) The Difficulty or Unsettled Nature of the Applicable State Law: As there are no difficult or unsettled issues of Delaware law involved in the Third–Party Complaint, this factor weighs against abstention.

(iv) The Presence of a Related Proceeding Commenced in State or Other Non–Bankruptcy Court: As no other proceeding has been commenced by either Crowley or WTC, this factor weighs against abstention.

(v) The Jurisdictional Basis, if Any, Other Than 28 U.S.C. § 1334: There appears to be no other jurisdictional basis than that found in § 1334. This factor weighs in favor of abstention.

(vi) The Degree of Relatedness or Remoteness of the Proceeding to the Main Bankruptcy Case: The facts and circumstances underlying the Third–Party Complaint are pervasively intertwined with those underlying the Complaint. Moreover, WTC and Crowley together have larger claims against Legates than the other creditors in this case combined. Indeed, the Complaint and the Third–Party Complaint relate to the single largest asset over which the Trustee is attempting to assert rights. This factor weighs against abstention.

(vii) The Substance Rather Than the Form of an Asserted "Core" Proceeding: The state law negligence and related claims Crowley is asserting against WTC in the Third–Party Complaint are non-core matters. This factor weighs in favor of abstention.

(viii) The Feasibility of Severing State Law Claims from Core Bankruptcy Matters to Allow Judgment to be Entered in State Court and Enforced in Bankruptcy Court: Although it is feasible to sever the state law claims from the core claims asserted in the Complaint, I question the judicial economy of doing so. Any such severing, although feasible, could result in Crowley being subject to inconsistent obligations. Such a result would undermine the overarching goal of the efficient administration of justice and the public policy of avoiding inconsistent verdicts. This factor weighs against abstention.

(ix) The Burden on the Court's Docket: The burden on the Court's docket is neutral.

(x) The Likelihood That Commencement of the Proceeding in Bankruptcy Court Involves Forum Shopping: No party has suggested that forum shopping is an issue in the Third–Party Complaint. Crowley asserts that he had no intention of bringing the Third–Party Complaint until he was confronted with the Trustee's Complaint. This factor weighs against abstention.

(xi) The Existence of the Right to a Trial by Jury: As WTC has filed a proof of claim in Legates' bankruptcy case, it is likely it waived its right to trial by jury

and has submitted itself to the Court's equitable jurisdiction. In any event, if WTC or Crowley is entitled to a jury trial on the state law counts, this adversary proceeding can be referred to the District Court. This factor weighs against abstention.

(xii) The Presence of Non–Debtors in the Proceeding: Both Crowley and WTC are non-debtors. This factor tips in favor of abstention.

Consideration of the aforementioned factors weighs heavily against abstention.

### Conclusion

For the reason stated above, I find this Court does have related to jurisdiction to hear the Third–Party Complaint and abstention is not appropriate. WTC's motion to dismiss the Third–Party Complaint is denied.

### ORDER

For the reasons set forth in the Court's memorandum opinion of this date, the motion (Doc. # 13) of third-party defendant Wilmington Trust Company to dismiss Dennis E. Crowley's third-party complaint is **DENIED.**